Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/15/2017 05:13 PM CDT

Lacy J. Donald, appellee, v.
Alex S. Donald, appellant.
___ N.W.2d ___

Filed March 17, 2017.    No. S-16-547.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.

2. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Child Custody.** Joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.

4. ____. Numerous parenting times do not constitute joint physical custody.

5. ____. The paramount consideration in determining child custody is the best interests of the children.

6. **Child Support: Rules of the Supreme Court: Presumptions.** The Nebraska Child Support Guidelines are to be applied as a rebuttable presumption and offer flexibility and guidance rather than a stringent formula.

7. **Divorce: Jurisdiction: Armed Forces.** Federal law precludes a state court, in a dissolution proceeding, from exercising subject matter jurisdiction over Department of Veterans Affairs disability benefits.

8. **Divorce: Property Division: Armed Forces: Pensions: Waiver.**
Pursuant to federal law, a state court cannot include the amount of military retirement pay that a veteran waives in order to receive disability benefits as divisible marital property.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge. Affirmed as modified.

Sean M. Reagan and A. Bree Robbins, of Reagan, Melton & Delaney, L.L.P., for appellant.

Tara L. Gardner and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

Alex S. Donald appeals from a decree dissolving his marriage to Lacy J. Donald. He presents two issues regarding child custody and support, urging that his additional daytime parenting time during Lacy's working hours required a joint physical custody classification and use of the joint custody child support worksheet. As we will explain, the relevant statutes and guidelines dictate otherwise. He presents a third issue regarding classification of his lump-sum disability payment from military service as marital property. Because federal law prevents a state court from doing so, we modify the decree to exclude the payment's proceeds. As so modified, we affirm the decree.

## II. BACKGROUND

### 1. Overview

Approximately 2 years 1 month after Alex and Lacy were married, Lacy filed a complaint for dissolution. There were two minor children born to the parties. At the time of trial, both children were under 4 years of age.

After a 2-day trial, the court awarded legal and physical custody of the children to Lacy, subject to Alex's parenting time, ordered Alex to pay child support, and divided the marital estate. During the marriage, Alex received a lump-sum disability benefit payment from the Department of Veterans Affairs (VA). In dividing the property, the court classified this payment as part of the marital estate and ordered that its proceeds be divided equally.

Because Alex's appeal contests only the award of custody, the child support order, and the classification of the lump-sum disability benefit payment as marital property, we summarize only the facts that are relevant to those issues.

## 2. CHILD CUSTODY

### (a) Parties' Contentions Below

Both parties testified that prior to their separation, Lacy worked outside of the home while Alex cared for the children during the workday. Alex was injured serving in the military and throughout the marriage was unable to work. By the time of trial, the parties had not reached an agreement regarding the custody arrangement and instead both offered different parenting plans.

Lacy proposed that she receive joint legal custody and primary physical custody of the minor children. Alex proposed joint legal and physical custody.

### (b) District Court's Parenting Plan

The district court did not adopt either party's proposed parenting plan; instead, it incorporated one of its own creation into the decree. The court's plan provided that Alex would have parenting time on alternating weekends—beginning Friday at 5:15 p.m. and ending Sunday at 8:15 a.m.—and 5 weeks of summer parenting time. After the children began attending school, the alternating weekend parenting time would be adjusted to begin on Thursday at the conclusion of school and end on Monday morning at the commencement of school.

The court also found that "[t]here [was] no reason why the daytime parenting time arrangement that occurred before the separation should not continue." Thus, before the children began school, and later during summertime school vacations, Alex would have parenting time every weekday from 7:45 a.m. until 5:15 p.m. Throughout each school year after the children began to attend, Alex's weekday parenting time would begin at the conclusion of school instead of 7:45 a.m.

The parenting plan allocated Alex's parenting time. Alex will have approximately 80 parenting-time overnights a year before the children begin attending school. After that, Alex will have approximately 120 parenting-time overnights a year.

### 3. CHILD SUPPORT

Child support was largely calculated based upon the amount of parenting time allocated between the parties. Because the children would both be in school within 3 years of entry of the decree, the court found that Alex's parenting time would soon "reduce significantly" with the loss of the weekday parenting hours. Therefore, the district court elected to calculate child support based on the parenting-time allocation after the children were in school. The court recognized Alex's additional daytime parenting time prior to the time the children were in school by implementing a downward deviation from the guidelines.

The court calculated child support using a sole custody worksheet and determined Alex's share of child support to be $855 per month. But the court also attached a child support deviation worksheet showing a downward deviation of $200 per month for the time period beginning May 1, 2016, through August 31, 2019. The court did not specifically explain how it calculated the downward deviation but did note that the eldest child would be starting school within 1 year.

### 4. VA DISABILITY BENEFIT PAYMENT

The parties disputed whether a lump-sum disability benefit payment was marital property subject to division. The lump-sum

payment was for past-due disability benefits after Alex retro-actively received an increase in monthly compensation.

### (a) Monthly Disability
### Benefit Payments

Alex received a service-connected injury while deployed and serving in the U.S. Marine Corps in 2008. The VA initially assessed his injury and associated major depressive disorder at 70 percent disability. This assessment entitled him to receive monthly disability benefit payments at a scheduled rate set by the VA.

### (b) VA Reevaluation

In November 2015, after the parties had separated, the VA reevaluated Alex's disability. The VA determined that Alex was entitled to "individual unemployability" status because he was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." This meant that although his disability was assessed as a 70-percent disability, the VA would compensate him at the 100-percent disability rate due to his individual unemployability.

The VA made the determination of individual unemploy-ability retroactive to April 2013 and issued a lump-sum payment, totaling $41,906.47, for the disability benefits he should have received at this increased rate. After receiving the lump-sum payment, Alex deposited $30,000 of the pay-ment into a health savings account and the remainder into a checking account.

### (c) District Court's Disposition

No evidence or testimony was offered to establish whether Alex was also entitled to retirement benefits or whether the dis-ability benefit payments included or otherwise waived retire-ment benefits. Nonetheless, the court concluded that the entire lump-sum payment was marital property. After including the lump sum in the marital estate, the court ordered Alex to pay an equalization payment to Lacy, totaling $37,000.

### III. ASSIGNMENTS OF ERROR

Alex assigns that the district court erred in (1) not awarding the parties joint physical and legal custody of the parties' minor children, "taking into consideration the significant amount of parenting time awarded"; (2) not deviating further in the child support calculation; and (3) including Alex's lump-sum disability benefit payment from the VA in the marital estate and dividing the payment equally between the parties.

### IV. STANDARD OF REVIEW

[1] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.[1]

[2] When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[2]

### V. ANALYSIS

#### 1. Child Custody

#### (a) Generally

Alex assigns that the district court erred by not awarding the parties joint physical and legal custody of their minor children, "taking into consideration the significant amount of parenting time awarded to [him]." Although he submits that his parenting plan should have been adopted, he focuses most of his argument on the proper characterization of the custody awarded.

Before turning to his primary arguments, we recall that a statute requires a court, in determining custody and parenting

---

[1] *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012).

[2] *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

arrangements, to consider certain factors relevant to the best interests of the minor child.[3] And we have summarized additional factors that a court may consider in making a child custody determination.[4] We see nothing in the district court's decree to suggest that the court disregarded any appropriate factor.

[3] To the extent that Alex argues for an alternating-week joint physical custody arrangement, we find no abuse of discretion by the district court. Joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.[5] In this regard, the district court's implicit assessment of witness credibility is particularly important. We now address Alex's primary arguments.

### (b) Physical Custody

Alex's assignment of error and argument as it relates to joint physical custody is primarily one of definition. He contends that the significant amount of parenting time awarded warranted a characterization of joint physical custody.

[4] Nebraska's Parenting Act[6] defines joint physical custody as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time."[7] While Alex does have liberal parenting time under the decree with all the

---

[3] See, Neb. Rev. Stat. § 43-2923 (Reissue 2016); *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[4] See *Schrag v. Spear, supra* note 3.

[5] *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

[6] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016).

[7] § 43-2922(12).

weekday parenting hours, he does not exercise "continuous blocks of parenting time" for "significant periods of time." And numerous parenting times do not constitute "joint physical custody."[8]

Furthermore, Alex does not challenge the fact that Lacy has the sole authority on the children's place of residence, since they primarily reside with her. Because the parenting plan as ordered does not fit the statutory definition of joint physical custody, the district court did not err in its characterization of the physical custody award. We therefore affirm the physical custody award.

### (c) Legal Custody

Alex's argument does not meaningfully distinguish between joint physical and joint legal custody. However, joint legal custody is separate and distinct from joint physical custody; it is "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health."[9] Therefore, we address it separately.

[5] The paramount consideration in determining child custody is the best interests of the children.[10] At trial, Lacy testified that she has been chiefly responsible for finding and hiring babysitters, enrolling and registering the eldest child in preschool, and arranging for and taking the children to their medical appointments.

Lacy also testified that since the parties' separation, she has had problems working with Alex on dividing and sharing the children's expenses—including the eldest child's preschool registration. On the other hand, Alex testified that he believed

---

[8] See *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001).

[9] § 43-2922(11).

[10] See, generally, Neb. Rev. Stat. § 42-364(3) (Reissue 2016); *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009); *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007).

he and Lacy could set aside personal differences to communicate and put the children's best interests first.

Upon our de novo review, we find no abuse of discretion in the district court's determination that it was in the best interests of the children for Lacy to have legal custody. Lacy was primarily responsible for making the big decisions concerning the children prior to the parties' separation. And, during the proceeding's pendency, she was the primary decisionmaker regarding the eldest child's education. We give weight to the fact that the district court heard and observed the witnesses and accepted Lacy's account of the parenting disagreements over Alex's. We affirm the award of legal custody to Lacy.

## 2. CHILD SUPPORT

Alex's argument concerning child support is closely related to his argument concerning child custody. He argues that he was awarded de facto joint custody. And, he contends that the district court should have calculated child support using a joint custody worksheet based on the number of parenting-time hours he was awarded.

The child support guidelines provide a rebuttable presumption that support shall be calculated using a joint custody worksheet when "a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year."[11] But, no specific provision of joint custody was ordered. Nonetheless, Alex argues that the district court should have deviated from the guidelines and used the joint custody worksheet because his parenting-time hours exceed 142 days per year.

Notably, Alex calculates his days of parenting time by converting the number of parenting-time hours he has with the children into equivalent days. After adding his 35 days of summer parenting time, Alex estimates that he has approximately

---

[11] Neb. Ct. R. § 4-212 (rev. 2011).

180 total days of parenting time per year before the children attend school.

[6] While the Nebraska Child Support Guidelines are to be applied as a rebuttable presumption and offer flexibility and guidance rather than a stringent formula,[12] we do not believe that the guidelines can be construed so as to allow for Alex's requested deviation. Our guidelines specifically provide that "a 'day' shall be generally defined as including an overnight period."[13] Alex does not dispute that under this definition, his parenting time falls far short of the threshold for a joint physical custody calculation.

In effect, the district court treated Alex's extra daytime parenting time as an alternative to third-party childcare. This was economically beneficial to both parties. In recognition of Alex's contribution to this economic benefit, the court provided a downward deviation from the child support guidelines. And the court sufficiently explained its deviation. Because we find no abuse of discretion in the deviation ordered, we affirm that part of the decree as well.

### 3. VA Disability Benefit Payment

Finally, Alex assigns that the district court erred by including a lump-sum VA disability benefit payment in the marital estate. We agree.

[7,8] The evidence presented at trial clearly established that the lump-sum payment was for retroactive service-connected disability benefits. And federal law precludes a state court, in a dissolution proceeding, from exercising subject matter jurisdiction over VA disability benefits.[14] In the same way, a state court cannot include the amount of military retirement pay

---

[12] See, Neb. Rev. Stat. § 42-364.16 (Reissue 2016); *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

[13] § 4-212.

[14] See, *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999); *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997).

that a veteran waives in order to receive such benefits as divisible marital property.[15] It is therefore an abuse of discretion to divide service-connected disability benefits, or any amount of waived military retirement pay, as part of the marital estate in a dissolution proceeding.

Lacy argues that it is possible the lump-sum payment included nondisability retirement benefits that were not waived. She further argues that Alex did not produce evidence establishing that the lump-sum payment was solely disability compensation. We disagree.

Alex presented evidence at trial and established that the lump-sum payment received from the VA was purely disability compensation. The lump-sum payment simply included the difference between the disability rate of compensation Alex had previously received and the new retroactive rate. Therefore, the evidence persuades us that the payment should not have been included in the marital estate.

After excluding the health savings account and the balance of the bank account representing the remainder of the lump-sum payment from the marital estate, we find that a recalculation of the equalization payment is also in order. Accordingly, we modify the decree to exclude the lump-sum payment and reduce the equalization payment ordered to $15,968.77.

## VI. CONCLUSION

The parenting plan as ordered did not fit the statutory definition of joint physical custody. Therefore, the district court did not err in its characterization of the physical custody award. We also conclude that the child support guidelines do not allow for a "day" to be construed as including any nonconsecutive 24 hours when determining whether to use the joint custody worksheet in support calculations. The district court was correct to use the sole custody worksheet in calculating

---

[15] See *id.* See, also, 10 U.S.C. § 1408(a)(4)(B) and (c)(1) (2012); *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989).

child support and did not abuse its discretion in ordering a deviation for the first 3 years.

Evidence presented at trial established that the lump-sum payment Alex received was purely for service-connected disability compensation. Because federal law precludes state courts, in proceedings to dissolve a marriage, from exercising jurisdiction over such disability compensation, we modify the divorce decree to exclude the lump-sum payment from the marital estate. We also reduce the ordered equalization payment to $15,968.77. As so modified, the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.