IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CAREY V. HAND

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEANNA DEE BOSWELL, FORMERLY KNOWN AS DEANNA DEE CAREY, APPELLANT,

v.

MITCHELL AARON HAND, APPELLEE, AND STATE OF NEBRASKA, INTERVENOR-APPELLEE.

Filed June 13, 2017.    No. A-16-905.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed in part, and in part reversed and remanded with directions.

Avis R. Andrews for appellant.

Shane J. Placek, of SidnerLaw, for appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Deanna Dee Boswell, formerly known as Deanna Dee Carey, appeals and Mitchell Aaron Hand cross-appeals from an order entered by the district court for Dodge County modifying an order of paternity and support entered on July 12, 2012. On appeal, Deanna argues the district court erred in awarding the parties joint physical custody and joint legal custody, with final decisionmaking authority awarded to Mitchell; in frustrating her decision to homeschool the minor child; and in not awarding her attorney fees. On cross-appeal, Mitchell argues the district court erred in calculating his child support obligation. For the reasons set forth below, we affirm in part, and in part reverse and remand with directions.

- 1 -

## II. BACKGROUND

The district court first entered an order determining paternity and child support in this matter on May 10, 2006. In that order, the district court awarded sole physical and legal custody of the parties' minor child, Elijah, born in 2005, to Deanna. Mitchell received parenting time every other weekend and one overnight per week. The court also established a holiday visitation schedule. Mitchell was ordered to pay $452.15 per month in child support and to maintain health insurance for Elijah. Mitchell was awarded the child exemption for income tax purposes for every eligible year.

On July 12, 2012, pursuant to a stipulation of the parties, the district court entered an order to modify the provisions of the paternity and child support order. Our record does not contain the pleadings related to the 2012 order, but the district court awarded Deanna sole physical custody and ordered joint legal custody to the parties, with final decisionmaking authority left to Deanna by agreement of the parties. The parties maintained the existing parenting schedule, with the exception of each parent receiving 2 weeks of continuous parenting time during the summer. Mitchell was ordered to pay $442 per month in child support. Mitchell maintained the child dependency tax exemption.

On January 22, 2015, the State of Nebraska filed a complaint to modify the child support order to make it conform with the Nebraska Child Support Guidelines. Mitchell filed an answer to the complaint on April 9, 2015. Deanna filed an answer and countercomplaint to modify the paternity and child support order on June 4, 2015. In her countercomplaint to modify, Deanna sought sole legal custody, less parenting time for Mitchell, increased child support, the child dependency exemption, and attorney fees. Mitchell answered Deanna's countercomplaint and filed a counterclaim for modification on June 15, 2015, seeking sole physical and legal custody subject to Deanna's parenting time. A hearing was held on the parties' complaints on May 25, 2016. The hearing continued on July 26, 2016.

Deanna and Mitchell were never married. Elijah is the parties' only child together. Deanna was pregnant with Elijah during her senior year of high school. Elijah has lived with Deanna since his birth. At the time of the hearing, Deanna had been married to her husband, Kelly Boswell, for over 3 years. Deanna and Kelly have 2 minor children together. Currently, Deanna and Kelly reside in a residence they own in Bennington, Nebraska with Elijah and his siblings.

Deanna was 29 years old at the time of the hearing. She attended Fremont Public High School until her senior year in 2005. She then attended Fremont Learning Center during her senior year due to her pregnancy with Elijah. She ultimately graduated from high school during the 2006 school year. Deanna testified that she did not graduate on time because she failed a few classes due to the school attendance policy. She testified that she attended one year of college at Metro Community College, studying accounting. Deanna's most recent employment was as a financial advisor at Vatterott College. She was employed there for a period of 1 to 2 years, ending in 2012. At the time of trial, Deanna was not employed outside of the home. She devotes her time to raising her children and homeschooling Elijah.

At the time of trial, Deanna had homeschooled Elijah for 3 years. Prior to being homeschooled, Elijah attended Standing Bear Elementary School, an Omaha Public School, from

kindergarten through second grade. Elijah also attended Blair Public Schools for part of his first grade year. Deanna testified she chose to homeschool Elijah so that she could be more involved in his education and to incorporate religion into his education. She also testified that she wanted to give him more individual attention in his education. Additionally, she wanted to keep Elijah from getting into trouble at school, did not want him to be bullied, and did not want him getting involved with drugs or alcohol.

Deanna is not involved with any homeschooling association. She testified that her primary resources are two aunts that had homeschooled their children and internet-based resources. Deanna testified that she followed the required yearly educational hours of the Nebraska Public School system, but wanted to extend the school year from 1,032 educational hours to at least 1,100 hours. She testified that she used a graded homeschool curriculum and supplemental workbook. She submitted the required information to the State of Nebraska each year and testified that she complied with the law. Prior to trial, Deanna had not administered any objective test for Elijah's progress because the State never required one. After the first day of trial, Deanna had Elijah take the Iowa Basic Skills Test. The results of the test were received prior to the last day of trial, but were not allowed into evidence as part of the district court's prohibition against evidence obtained during a trial continuation. Deanna testified that she believed Elijah had attained the appropriate level of education for a child of his age. She testified that she is able to know this because she reviews Elijah's completed lessons and monitors his progress.

Deanna testified that Elijah did much of his homeschool work independently. She was available to assist him with his questions as he needed it, and she set aside at least 1 hour per day for one-on-one teaching with Elijah. Elijah had an assigned homeschooling area where he worked while Deanna was caring for his siblings. Deanna testified that she intended to homeschool her other children, and had already started a preschool program with her other son.

Elijah was involved in extracurricular activities as well. He participated in wrestling, a book club, a homeschool club, a science club, a Lego club, an arts club, and youth group at church. Additionally, Deanna utilizes Fridays to go on homeschool field trips with Elijah. Deanna testified that Elijah is more introverted than some children and that he seems to benefit from his extracurricular activities. Deanna testified that she does not believe homeschooling has hindered Elijah's ability to make friends.

Deanna testified that she wanted to modify the custody order to have sole legal custody and to reduce Mitchell's parenting time back to his original parenting time from the 2006 order, which would reduce Mitchell's parenting time to every other weekend with one weeknight and no summer parenting time. She testified that she also wanted Elijah to return home early from Mitchell's weekend visitation once or twice a month to participate in more family events. Deanna testified that Mitchell is not involved in Elijah's upbringing. Deanna testified that Mitchell does not take Elijah to the doctor and does not inquire about Elijah's education.

Kelly, Deanna's husband, is a 37 year old software engineer. He has been employed as a software engineer for over 8 years. Kelly has a bachelor's degree in electronic engineering. Kelly provides health insurance for his family, including Elijah. He helps with some homeschooling by conducting science experiments with Elijah and answering some questions Deanna is unable to answer. Kelly was homeschooled for a period of time and believes it was a positive experience for

him. He plans to have Deanna homeschool their children and he believes she is a more than satisfactory teacher. Kelly testified that he is like a father figure to Elijah. Additionally, Kelly volunteers as the coach of Elijah's wrestling team. Kelly does not believe homeschooling has hindered Elijah's mental or social abilities.

Mitchell is 33 years old and has a high school diploma. He works as a welder at Hunke Manufacturing in Snyder, Nebraska. Mitchell resides in Nickerson, Nebraska, with his 80 year old grandmother. The longest period of unemployment for Mitchell since high school was a 3 month period after his grandfather passed away in October 2015. Mitchell lost his job at that time with a different employer. He lived off of his savings during this period and did not pay all of the child support which was due. However, at the time of the hearing, he was current on his child support obligations. Mitchell testified he had never missed any of his midweek or weekend parenting time with Elijah.

Deanna testified that a few weeks after the 2012 modification order granted joint legal custody to the parties, she terminated Elijah's public school education and began homeschooling Elijah. Deanna admitted that she did not request or obtain Mitchell's signature on the paperwork required by the State. Deanna also admitted that she provided the State with the 2006 custody order, instead of the 2012 custody order. Deanna testified the only time Mitchell complained to her about her decision to homeschool Elijah was when he first learned of it in 2012.

Mitchell learned of Deanna's change of residences through Elijah. Deanna never directly told Mitchell that she and Elijah moved to Blair, nor did she inform Mitchell that they had moved back to Omaha. Mitchell testified that he learned of these events by Elijah providing him directions after his parenting time. Mitchell testified that he learned of Elijah's baptism from Elijah after the event had already occurred. He was not invited to the baptism.

Mitchell has not been involved in Elijah's homeschooling and has made no effort to be involved. Mitchell testified that he does not know the rules and regulations involved with homeschooling. He does not communicate with Deanna about Elijah's homeschooling, but he does not think Deanna is qualified to teach Elijah. Mitchell has made no effort to determine Elijah's academic progress as compared to other children his age and admitted he did not know how Elijah was performing academically. Mitchell only complained about Deanna's homeschooling once, in 2012, and did not attempt to contact the State nor did he know that the State could require testing of Elijah. Mitchell testified that he disagrees with homeschooling.

Mitchell has not been involved in Elijah's medical care. He has not attempted to be involved with his medical care, either. Mitchell does not know who Elijah sees as primary care physician. As far as where Mitchell would like Elijah to go to school, he testified that Logan View Public Schools would be his preferred district. However, Mitchell testified that he did not do any research on the school's curriculum. Mitchell had met some of the teachers through his nieces and nephews, but did not know who would be teaching Elijah.

Mitchell testified that he wanted sole custody of Elijah. He requested full custody so that Elijah could have a proper education at school and so that he could see Elijah more than he currently does. Mitchell testified that if he did not receive sole custody, he wanted the court to order Elijah go to a traditional school and he wanted to have parenting time the entire summer.

However, he testified that Deanna was a good mother and that she provided the necessary physical care.

Both parties testified at the hearing that they do not communicate well with each other. They communicate infrequently, most often through text messages. Deanna testified that she communicates some events to Mitchell through Elijah. Otherwise, Deanna testified that she does not personally communicate with Mitchell about events in Elijah's life. She testified that she does not communicate with Mitchell because she does not like Mitchell and does not believe he is a good role model. Mitchell testified that he has communicated with Deanna through Elijah, as well. Mitchell testified that he has not tried to improve his communication with Deanna because it is not a productive conversation.

The modification order was filed on September 21, 2016. In the order, the district court found that there was insufficient evidence to show that Elijah had been injured or harmed by Deanna's decision to homeschool him. However, the district court went on to find that it was in Elijah's best interests for the parties to have joint physical and legal custody, with final decisionmaking authority awarded to Mitchell. The district court did not order that Elijah attend a specific school or be homeschooled, rather, it suggested that if Elijah attended public school, he should attend school in Bennington, Nebraska. The district court modified the parenting schedule. The court awarded Mitchell parenting time three weekends per month and one weeknight every week during the school year. Mitchell was awarded parenting time with Elijah for the entire summer break. The court awarded Deanna primary care during the school year and alternating weekends during the summer. Additionally, the court ordered Mitchell to pay $541 per month in child support until Elijah reached the age of majority. The court ordered Mitchell to provide health insurance for Elijah. The court ordered the parties to alternate the child dependency tax exemption. The court ordered the parties to pay their own attorney fees. Finally, the district court ordered that the remaining portion of the May 10, 2006 order not be modified, but remain in place.

## III. ASSIGNMENTS OF ERROR

Restated and consolidated, Deanna argues on appeal that the district erred in (1) awarding the parties joint physical and legal custody of Elijah with final decisionmaking authority awarded to Mitchell; and (2) not awarding her attorney fees. Restated and consolidated, on cross-appeal, Mitchell argues the district court erred in calculating his child support obligation.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Id.*

## V. ANALYSIS

### 1. DEANNA'S APPEAL

#### (a) Legal Custody

Deanna argues the district court erred in awarding the parties joint legal custody of Elijah with final decisionmaking authority awarded to Mitchell. She argues that the evidence presented at trial does not support the district court's findings and that such a custody award is not in Elijah's best interests. Upon our review, we find that Deanna's assertions have merit.

A child custody modification case requires the party seeking modification to: (1) show that a material change in circumstances has occurred after the entry of the previous custody order and affecting the best interests of the child; and (2) prove that changing the child's custody is in the child's best interests. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id.*

The child's best interests requires a parenting arrangement and plan which provides for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Reissue 2016). Moreover, § 43-2923 sets forth a non-exhaustive list of factors to consider in determining the child's best interests in regard to custody. Such factors include: the child's relationship with each parent, the child's desires, the child's general health and well-being, and credible evidence of abuse inflicted on the child by any family or household member. In addition to the "best interests" factors provided in § 43-2923, a court making a child custody determination may consider: the moral fitness of the child's parents; respective environments offered by each parent; the emotional relationship between the child and parents; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag*, *supra*.

In this case, the district court found a material change of circumstances had occurred since the entry of the previous modification order filed in 2012. The court then modified legal custody by awarding joint legal custody with final decisionmaking authority to Mitchell. Based upon our de novo review, we find the district court abused its discretion in modifying the prior order such that Mitchell was awarded final decisionmaking authority.

The Parenting Act defines "[j]oint legal custody" as "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." Neb. Rev. Stat. § 43-2922(11) (Reissue 2016). Courts typically do not award joint legal custody when the parties are unable to communicate effectively. See, *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009). However, a trial court's decision to award joint legal or physical custody can be made without parental agreement or consent so long

as it is in the child's best interests. See, *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208, (2016).

Mitchell has never sought or taken an active role in most aspects of Elijah's upbringing. Other than complaining of Deanna's homeschooling of Elijah on one occasion in 2012, Mitchell knows nothing about Elijah's academics. Mitchell has never asked about the homeschool curriculum, how Elijah was progressing, or had Elijah objectively tested. Mitchell has not researched any of the public schools he had proposed as an alternative to Deanna's homeschooling. Mitchell does not know which medical doctor Elijah visits. There is no evidence of any attempt by Mitchell to become actively involved in Elijah's religious upbringing and only minimal involvement in his healthcare.

While the district court does not specifically state what material change in circumstance necessitated the modification of final decisionmaking authority, it appears the district court believed it was Deanna's attempts to alienate Mitchell from Elijah. The evidence at trial does not support the district court's decision as to final decisionmaking authority. Mitchell has never challenged Deanna's parenting decisions, legal or otherwise, but for her decision to homeschool Elijah. Mitchell only voiced objection once about Deanna's decision to homeschool Elijah, nearly 3 years prior to trial. Moreover, Mitchell provided no proof that Deanna's homeschooling had harmed Elijah, a point acknowledged by the district court in its order. See, *Doolittle v. Doolittle*, 3 Neb. App. 230, 525 N.W.2d 245 (1994). We find that the district court abused its discretion in finding that there was a material change in circumstance with respect to legal custody. Because of Mitchell's lack of involvement in most aspects of raising Elijah, the district court abused its discretion in awarding him final decisionmaking authority.

While it was error for the district court to change the final decisionmaking authority, it was not error to deny Deanna's request for sole legal custody. Deanna failed to present evidence of a material change in circumstance, thus the 2012 stipulated order should remain in place. Even if we were to find that a material change in circumstance regarding legal custody existed, modifying final decisionmaking authority was not in Elijah's best interests given the evidence adduced. Therefore, an award of sole legal custody to Deanna is not merited.

(b) Physical Custody

Deanna argues the district court erred in awarding the parties joint physical custody with primary placement with Mitchell during the summer months. Upon our review, we agree.

The Nebraska Parenting Act defines joint physical custody as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time." Neb. Rev. Stat. § 43-2922(12). Joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars. See, *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017).

In the same regard as legal custody, there has not been a material change in circumstance demonstrated by either party with respect to physical custody. Therefore, the district court's award

- 7 -

of joint physical custody with primary placement with Mitchell during the summer months constitutes an abuse of discretion. While the district court believed there was some evidence that Deanna's preference was to limit Mitchell's parenting time with Elijah, the evidence cited in the foregoing section demonstrates that Mitchell has not been actively involved in the upbringing of Elijah. We find that since neither party has demonstrated a material change in circumstance, the 2012 stipulated order should remain in place. This includes the provisions that the summer months shall be defined by the school district where Elijah resides, as well as each parent receiving two weeks of continuous parenting time during the summer months. To be clear, Deanna does not possess the ability to define the school year for purposes of when the summer vacation from school begins and ends under the 2012 stipulated order. Those parameters are set by the school district in which the child resides.

## 2. DEANNA'S ATTORNEY FEES

Deanna argues the district court erred in not awarding her attorney fees. Deanna argues that Mitchell's sole contention in this matter was Deanna's homeschooling of Elijah, and that the established law in *Doolitle, supra*, made his position untenable. This assertion lacks merit.

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Burcham v. Burcham*, Neb. App. 323, 886 N.W.2d 536, 546 (2016).

We find that the district court did not err in refusing to award Deanna attorney fees. There was no formal discovery in this matter and no novel issues of law. Mitchell's position was not untenable under *Doolittle*. Therefore, we find that that the district court did not err in not awarding Deanna attorney fees.

## 3. MITCHELL'S CROSS-APPEAL

Mitchell argues the district court erred in failing to give him a deduction for his 3 percent contribution to his retirement account, deductions for his health, dental, and vision insurance, utilizing his higher 2015 earnings, and not utilizing the joint custody form or granting an abatement during the summer months when Mitchell has physical placement of Elijah. Upon our review, we find that Mitchell's assertions regarding utilization of a retirement deduction does have merit.

The paramount concern in child support cases, whether in the original proceeding or subsequent modification, is the best interests of the child. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). In general, child support payments should be set according to the Nebraska Child Support Guidelines adopted by the Nebraska Supreme Court, which are presumed to be in the best interests of the child. *Id.* See, also, *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In determining the amount of a child support award, a trial court must consider the status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support of the children. *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999).

### (a) Retirement Deduction

The Nebraska Child Support Guidelines provide that mandatory retirement contributions should be deducted to arrive at monthly net income. Neb. Ct. R. § 4-205. Where no mandatory retirement plan exists, a deduction shall be allowed for a continuation of actual voluntary retirement contributions not to exceed 4 percent of the gross income from employment or 4 percent from the net income from self-employment. *Id.*

In this case, the district court did not give Mitchell a deduction for his retirement contribution. We find that the failure to allow for a 3 percent deduction was an abuse of discretion.

### (b) Insurance Deductions

Mitchell argues that the district court erred in calculating his deduction for his health insurance and erred in calculating the deduction amount for his health insurance premium that was actually paid. Upon our review of the record, we find that the records from Mitchell's employer support the district court's calculation. Therefore, the district court did not abuse its discretion in calculating Mitchell's insurance deductions.

### (c) Earnings Utilized

The Nebraska Child Support Guidelines provide that in calculating the amount of support to be paid, a court must consider the total monthly income, defined as the income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). The Supreme Court of Nebraska stated that courts should take a flexible approach in determining a person's income for purposes of child support, because child support proceedings are, despite the child support guidelines, equitable in nature. *Id.*

We find that the district court did not abuse its discretion in utilizing Mitchell's 2015 income. The district court utilized Mitchell's income before he was terminated from his previous position in that Mitchell was terminated from that position due to his missing work, despite Mitchell's claim that his absences were due to the unfortunate passing of his grandfather. We find that having assessed Mitchell's credibility, the district court did not abuse its discretion in utilizing Mitchell's higher wages in 2015 in computing his child support obligation.

### (d) Summer Abatement

Since we reversed the award of joint physical custody and Elijah will not be placed with Mitchell the majority of the summer, any issue of utilizing a joint physical custody calculation or allowing a summer abatement no longer remains.

### VI. CONCLUSION

We find that the district court erred in awarding joint legal and physical custody, with final decisionmaking authority to Mitchell. We remand this issue with directions for the district court to reinstate the 2012 stipulated order governing custody and decisionmaking authority. Additionally, we find that the district court did not err in not awarding Deanna's attorney fees. Finally, we find that the district court erred in Mitchell's child support calculation and we remand

in order for the district court to recompute the child support calculation consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.