IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


Van Ranken v. Van Ranken


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


Daniel R. Van Ranken, appellee,

v.

Nellie J. Van Ranken, appellant.


Filed March 9, 2021.    No. A-20-380.


Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

Nicole M. Mailahn and Elizabeth J. Klingelhoefer, of Jacobsen, Orr, Lindstrom, & Holbrook, P.C., L.L.O., for appellant.

Loralea L. Frank and Nathan P. Husak, of Bruner, Frank & Schumacher, L.L.C., for appellee.


Riedmann, Bishop, and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

Nellie J. Van Ranken appeals the decree entered by the Buffalo County District Court dissolving her marriage to Daniel R. Van Ranken. Nellie argues the district court erred in its division of the marital estate, in vacating her alimony award, and in failing to allocate tax exemptions equally between the parties. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

Daniel and Nellie were married in June 2002. Three children were born during the marriage: Lucy, born in 2006; Sadie, born in 2008; and Harper, born in 2011.

Prior to the parties' marriage, Nellie obtained an associate's degree in applied sciences and Daniel received an associate's degree in general studies, science, and respiratory care. During the

marriage, Nellie worked as a Physical Therapy Assistant 3½ days per week while Daniel was employed at Bryan Health working three, 12-hour shifts per week. As a result of the parties' work schedules, the minor children were in daycare only 1 to 2 days per week. Daniel would watch the children 2 days a week, while Nellie would watch the children 1½ days per week.

During the parties' marriage, Daniel obtained a bachelor's degree in management. While Daniel was obtaining his bachelor's degree, Nellie cared for the minor children. In 2014, Daniel began a new job as a Manager of Respiratory Therapy in Kearney, Nebraska. Nellie testified that as a result of his new job, Daniel's salary increased from approximately $50,000 per year to $80,000 per year. From 2014 to 2017, Daniel's job required him to work up to 80 hours per week, leaving Nellie to maintain the household and care for the parties' minor children. Although Nellie obtained full-time employment as a physical therapy assistant in Kearney, she testified that Daniel's "job always took precedence over [hers]." Daniel testified that his current salary is approximately $122,000 per year, and Nellie testified that her salary is approximately $55,000 per year.

In addition to income from their respective employments, the parties also received income from cattle sales. At the time of their marriage, Nellie had 10 to 12 head of cattle, which she owned with her parents and which she had acquired prior to the parties' marriage. Throughout the parties' marriage, Nellie and Daniel continued selling these cattle and the cattle's offspring. As cattle were sold, Nellie's parents would issue a check to Nellie; however, on at least one occasion, they issued a check to both Nellie and Daniel. The proceeds from cattle sales were deposited into the parties' joint account. According to Daniel, the joint account also included income from the parties' respective employments, while Nellie testified the funds in the joint account consisted of tax refunds and birthday present funds. Daniel also testified that, over the years, the money in the parties' joint account was used to finish a basement in Lincoln, put in a paver patio, build a garden shed, construct a fence, purchase furniture, buy vehicles, and pay Daniel's student loans. In December 2014, the parties sold their remaining cattle, received a final cattle proceeds check, and subsequently closed the joint account that they had previously used for this purpose.

In 2014, the parties moved to Amherst, Nebraska, after obtaining 4.67 acres of land from Nellie's parents in exchange for a payment of $5,000. Nellie wrote a check to her parents from the parties' joint checking account, and in return, Nellie's parents deeded the property to the parties as joint tenants. Nellie's parents filed a Form 521 Real Estate Transfer Statement showing the transfer was a sale, not a gift. The parties subsequently built a home on that land and lived there until November 2018. In April 2019, Daniel filed for dissolution of the parties' marriage.

Trial was held in February 2020 during which the aforementioned facts were adduced. The parties' joint property statement itemizing the parties' property was received into evidence as exhibit 17. Prior to trial, the parties filed a stipulated agreement in which the parties stipulated property listed on exhibit 17 as sections A (except sentimental items which were to be valued and divided by the court), B, C, D, E, G, H, I, and J should be divided according to their stipulated agreement. As part of the stipulated agreement, the parties agreed that Daniel should be awarded the marital home along with its associated debt.

In April 2020, the district court entered its decree of dissolution. In that decree, the court addressed and divided items from exhibit 17 not resolved by stipulation as follows:

The parties shall equally divide the accounts F3, F6 and F9. The Plaintiff is awarded F1, one half of F2, F4, F5, one half of F7, FA [sic], F 16 and one half of F 17. The Defendant is awarded F1O and . . . one half of F 17. Each party is otherwise ordered the property in his or her respective possessions or as set forth in in [sic] Exhibit 25. [Nellie] is awarded a QDRO from [Daniel's] retirement at F 11 in the amount of $77,105.

[Nellie] failed to meet her burden of proof regarding the gift of land P9. The evidence does establish that the purchase price was less than market value. It was nominally a sale and made to both parties. [Nellie] failed to meet her burden of proof regarding her premarital cattle L5. The proceeds of those cattle were co-mingled in a joint account and are not separately identifiable.

The district court awarded the parties joint physical custody of their three minor children but awarded Nellie legal custody of the children. The district court also ordered Daniel to pay child support and ordered Daniel to pay Nellie $900 per month in alimony for 36 months.

Nellie subsequently filed a motion for a new trial. Daniel also filed a motion for a new trial or, in the alternative, a motion to alter or amend. In May 2020, the district court entered an order resolving the parties' motions finding, relevant to this appeal:

The parties shall equally divide F2, F3, F6, F7 and F9.

[Nellie] is awarded F1, L4, F5, F8, F13, F15, F16 and F17 by QDRO (previously divided between the parties).

[Daniel] is awarded F10, F11 (previously divided between the parties), F12 and F14.

[Nellie] requests a cash payment . . . to enable her to make a down payment on a home. The Court enters an equalization judgment in favor of [Nellie] against [Daniel] in the amount of $60,000 replacing the previous QDRO of F 11 and the alimony previously awarded.

Although alimony and distribution of property have different purposes in marriage dissolution proceedings, they are closely related and circumstances may require that they be considered together. *Pendleton v. Pendleton*, [242 Neb. 675, 496 N. W.2d 499 (1993)].

The Court vacates the previous alimony award.

The district court also more fully elaborated that the cattle proceeds should be considered part of the marital estate because of comingling of those funds.

Nellie has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Nellie argues, restated, the district court abused its discretion by failing to equitably divide the marital estate by (a) including Nellie's premarital cattle proceeds in the marital estate, (b) including land that was gifted to Nellie in the marital estate, (c) failing to adopt the parties' joint property statement and arbitrarily assigning values to the property that do not conform to the evidence adduced at trial, and (d) entering an inequitable equalization payment. Nellie also contends the district court abused its discretion in vacating her alimony award and failing to allocate tax exemptions equally between the parties.

## IV. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

When evidence is in conflict, an appellate court considers, and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Donald v. Donald, supra*.

## V. ANALYSIS

### 1. MARITAL ESTATE

Nellie first argues the district court made multiple errors in connection with the division of the marital estate. Specifically, Nellie contends that the district court erred in (a) including premarital cattle proceeds as part of the marital estate, (b) including land gifted to her as part of the marital estate, (c) failing to adopt the parties' joint property statement and arbitrarily assigning values to property that do not conform to the evidence presented at trial, and (d) entering an inequitable equalization payment.

First, regarding the marital estate, the Nebraska Supreme Court has articulated:

> Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. See, *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008); *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

*Despain v. Despain*, 290 Neb. 32, 41, 858 N.W.2d 566, 573 (2015).

To determine the assets included in the marital estate, the Nebraska Supreme Court has explained:

> Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling

does not occur. The burden of proof rests with the party claiming that property is nonmarital.

*Brozek v. Brozek*, 292 Neb. 681, 698, 874 N.W.2d 17, 31 (2016).

(a) Cattle Proceeds

Nellie argues the district court erred in including her cattle proceeds in the marital estate. She argues she acquired the cattle prior to her marriage to Daniel and that the proceeds from the sale of cattle during the marriage were all premarital as established by the evidence showing the $41,153 in cattle proceeds were paid in thirteen checks. Nellie contends that although the cattle proceeds were deposited in the parties' joint account, the only other money deposited in that account was from the parties' tax refunds, which were insignificant--$180 in 2018 and none in 2017. She notes Daniel directly benefited from $16,400 of her cattle proceeds because he was awarded the Harley-Davidson Motorcycle valued at $6,400, and had his $10,000 student loans paid off, both of which were financed with money from the joint account. Nellie asserts that the district court abused its discretion in not finding $41,153, or in the alternative a portion of $41,153, was premarital. Nellie urges us to follow *Burgardt v. Burgardt,* 304 Neb. 356, 934 N.W.2d 488 (2019) in making our determination that the cattle proceeds should not be included in the marital estate.

In *Burgardt*, the Nebraska Supreme Court was faced with the issue of whether a portion of the husband's 401K and proceeds from an inheritance constituted nonmarital property. More specifically, the husband argued that the Court of Appeals erred in determining his failure to offer documentary proof to support his unrefuted testimony resulted in a failure to satisfy his evidentiary burden. *Id.* Ultimately, the Nebraska Supreme Court reversed the Court of Appeals and held that even without documentary evidence, there was sufficient evidence in that record for the district court to conclude the husband satisfied his burden. *Id*. In reaching this conclusion, the Nebraska Supreme Court articulated:

> A nonmarital interest in property may be established by credible testimony. In *Brozek v. Brozek*, [292 Neb. 681, 874 N.W.2d 17 (2016),] we recognized that a spouse's own testimony can establish a "'tracing link,'" i.e., tracking an asset to a nonmarital source. Of course, triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. . . .
>
> While documentary evidence may be more persuasive, it is not absolutely required.

*Burgardt v. Burgardt*, 304 Neb. at 364-65, 934 N.W.2d at 495.

Applying the principles discussed in *Burgardt*, we note Nellie did not provide documentation showing the cattle proceeds were deposited into the joint account nor any documentation that those proceeds were used to pay for the Harley-Davidson motorcycle, to pay off Daniel's school loans, or any other documentary evidence governing the disposition of these

funds. Instead, Nellie relies on her testimony to support her argument, but her testimony somewhat differed from Daniel's testimony.

Specifically, Nellie testified that she received cattle proceeds in the form of checks and deposited them into the parties' joint savings account no. 8554. She explained that she knows the checks were deposited into that account and not another account because she handled the deposits and payments of bills. She also acknowledged that birthday presents and tax refund money were deposited into the same account as the cattle proceeds but that the parties' salaries were not deposited in that account. Nellie testified the funds were used to purchase furniture, vehicles, guns, the Harley-Davidson motorcycle, and to pay $10,000 of Daniel's school loans. In contrast, Daniel testified the cattle proceeds were deposited in the parties' joint checking account along with the parties' employment income. Daniel explained the money was used for improvements to their home in Lincoln, furniture, and vehicles.

As we read Nellie's argument, she does not dispute that once nonmarital assets are commingled with marital assets, they can lose their identity as separate property. Nellie simply argues that in relation to the joint account, she was not required to provide documentary evidence of whether the proceeds were combined with marital funds or how the proceeds were spent. Instead, she argues her testimony was sufficient here to establish how the funds were combined and where they were spent, and that testimony was sufficient to satisfy her burden that she was entitled to a separate property award.

But here, unlike in *Burgardt*, Daniel provided testimony contradictory to Nellie's testimony regarding the cattle proceeds. That testimony included that the cattle proceeds were combined with the parties' employment income, in stark contrast to Nellie's testimony, and used to fund a host of marital expenses and property. It appears the district court found Daniel's testimony more credible and as such, found the cattle proceeds could not be traced, became commingled with the parties' marital property, and should therefore be included in the marital estate. We find the district court did not abuse its discretion in finding that Nellie failed to satisfy her burden of proof that the proceeds from the sale of cattle remained nonmarital property. Accordingly, this assigned error fails.

(b) Land

Nellie argues the district court abused its discretion in failing to set aside $29,500 for her as nonmarital property, which represents a gift of land to her from her parents. She explains that when the parties were unable to find land in the area near Amherst, Nebraska, her parents offered her 4.67 acres of land. She contends the transaction was not an arms-length transaction because the parties paid her parents $5,000 for the land only at Daniel's insistence. Nellie argues her parents' donative intent is not negated by Daniel's insistence of paying $5,000. The district court found Nellie failed to meet her burden of proof regarding the gift of the land and explained that while the purchase price was less than market value, it was nominally a sale and made to both parties.

"Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital. In a marital dissolution proceeding, the burden of proof rests with the party claiming that property is nonmarital." *Burgardt v. Burgardt*, 304 Neb. 356, 363, 934 N.W.2d 488, 494 (2019).

Rhonda Johnson, a certified residential real estate property appraiser, opined the land was worth $34,500 in October 2014. Johnson testified she completed a retroactive appraisal of the land by considering the land's value prior to the improvements made to the land by the parties and by comparing similar properties in the area at that time.

Jeanette Taubenheim, Nellie's mother, testified it was not her intention to gift the land to Nellie but instead to give the parties a place to build their home at a significantly reduced value to benefit the parties' family. Taubenheim also explained Daniel is "a proud guy" and wanted to pay something for the land, so he came up with the $5,000 amount, which Taubenheim used to install heated tile in the parties' home. Exhibit 19 is a real estate transfer statement used to document the land transaction for tax purposes and shows the type of transfer for the land was a sale.

In short, the evidence supports a finding that the property was sold to both Nellie and Daniel to serve as a location on which to build their marital home. Even if there was a gift component to it, i.e., a below-market sale, the evidence was sufficient for the district court to conclude that any gift component to the transaction made was to both Nellie and Daniel. Based on this evidence, we cannot say the district court erred in finding the transaction was not a gift to Nellie alone and constituted marital property. Thus, this assigned error fails.

(c) Property Statement and Equalization Payment

Nellie next assigns the court erred by not adopting the parties' joint property statement and arbitrarily assigned values to property that do not conform to the evidence adduced at trial. We first note the argument is raised as a subpart to Nellie's general assignment that this resulted in an inequitable division of the marital estate.

As we set out in the statement of facts, the parties stipulated to the division of many of the marital assets in exhibit 17 and left the rest to be divided by the court. In its decree, the court then made that division, albeit without referencing the value the court was ascribing to each asset, presumably because the parties stipulated to the values. In doing so, Nellie argues that the court did not adopt the values from exhibit 17, their "Joint Property" statement, which then resulted in an inequitable distribution.

First, we fail to see how Nellie can conclude what value the court ascribed to the assets it divided because, in its decree, the court simply divided the assets without referencing their specific values. That said, when applying the values stipulated by the parties and applying the court's order of distribution, the division of assets as set forth in Daniel's brief, which Nellie concedes, is as follows:

| ASSETS | APPELLEE | APPELLANT |
|---|---|---|
| A. Household Furnishings & Equipment | $12,230.00 | $12,190.00 |
| B. Checking & Savings Accounts | $82,533.00 | $82,533.00 |
| C. Automobiles & Other Vehicles | $12,764.00 | $15,814.00 |
| D. Farm/Business Equipment, Inventory, & Supplies | $ - | $ - |
| E. Real Estate | $354,000.00 | $ - |
| F. Life Insurance & Retirement Plans | $208,462.80 | $200,907.84 |
| G. Miscellaneous | $7,375.00 | $ - |
| **TOTAL ASSETS** | **$677,349.80** | **$311,444.84** |

**LIABILITIES**

| | | |
|---|---|---|
| H. Mortgages or Contracts on Real Estate | ($232,452.27) | $ - |
| I. Secured Creditors | $ - | $ - |
| J. Unsecured Debts | ($916.14) | ($1,866.79) |
| **TOTAL DEBTS** | **($233,368.41)** | **($1,866.79)** |

**LESS: ASSETS OWNED PRIOR TO MARRIAGE**

| | | |
|---|---|---|
| K-L | ($265.00) | ($110.00) |
| O-P Gifts | ($2,690.00) | $ - |
| **TOTAL PRE/NONMARITAL ASSETS** | **($2,955.00)** | **($110.00)** |

**PLUS: DEBTS ON DATE OF MARRIAGE**

| | | |
|---|---|---|
| M-N | $ - | $ - |
| **NET MARITAL ESTATE** | **$441,041.39** | **$309,468.05** |
| EQUITY EQUALIZATION PAYMENT | ($65,786.67) | ($65,786.67) |
| EQUALIZATION AMOUNT | $375,254.72 | $375,254.72 |

Thus, applying the values assigned by the parties, when coupled with the $60,000 equalization payment ordered by the court (unlike the $65,786.67 equalization payment included by Daniel in the above table), the parties received a nearly equal division of the marital estate. The general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Doerr v. Doerr,* 306 Neb. 350, 945 N.W.2d 137 (2020). After reviewing this record, we cannot say the district court abused its discretion in awarding close to a fifty-fifty split of the parties' marital estate. This assigned error fails.

## 2. ALIMONY

Nellie next argues the district court abused its discretion when it vacated her alimony award. In the court's April 2, 2020, decree, the court awarded Nellie alimony in the amount of $900 per month for 36 months beginning April 1, 2020. However, following Nellie's motion for a new trial, on May 1, the court vacated that portion of the decree in which the court awarded alimony and found:

> [Nellie] requests a cash payment . . . to enable her to make a down payment on a home. The Court enters an equalization judgment in favor of [Nellie] against [Daniel] in the amount of $60,000 replacing the previous QDRO of F11 and the alimony previously awarded. Although alimony and distribution of property have different purposes in marriage dissolution proceedings, they are closely related and circumstances may require that they be considered together. *Pendleton v. Pendleton,* [242 Neb 675, 496 N.W.2d 499 (1993)].
>
> The Court vacates the previous alimony award.

Nellie now challenges, as an abuse of discretion, the court's substitution of a $60,000 cash equalization payment in exchange for the $77,105 QDRO award of Daniel's retirement account and 36 months of alimony at the rate of $900 per month.

In her praecipe for the bill of exceptions, Nellie's request included the hearing on her motion for new trial. However, within the prepared bill of exceptions, the court reporter attests that no record was made of the April 20, 2020, hearing in connection with Nellie's motion for new trial.

The district court's order indicates that it substituted a cash equalization payment in exchange for a portion of Daniel's retirement account and alimony as a result of Nellie's request for immediate cash at the hearing governing her motion for a new trial. Although, in connection with her appeal, Nellie filed a request for a record from that hearing, the court reporter attested that no record was made at that hearing. According to Neb. Ct. R. App. P. § 2-105(A)(1), court reporters are required to "make a verbatim record of the evidence offered at trial or other evidentiary proceeding(s)." However, in accordance with Neb. Ct. R. App. P. § 2-105(A)(2):

> *Upon the request of the court or of any party, either through counsel or pro se,* the court reporting personnel shall make or have made a verbatim record of anything and everything said or done by anyone in the course of trial or any other proceeding, including, but not limited to, any pretrial matters; the voir dire examination; opening statements; arguments, including arguments on objections; any motion, comment, or statement made by the court in the presence and hearing of a panel of potential jurors or the trial jury; and any objection to the court's proposed instructions or to instructions tendered by any party, together with the court's rulings thereon, *and any posttrial proceeding.*

(Emphasis supplied.)

Because a hearing on a motion for a new trial is a posttrial proceeding, and because the court's order does not reflect that evidence was received at this hearing, the court reporting personnel here was only required to make a record of this hearing if requested to do so by the court or by counsel. As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016). In this case, Nellie fails to present this court with a record from that posttrial hearing or present this court with any indication she contemporaneously requested a record from that hearing and that none was made. Without a record from this hearing, we are unable to determine what specific request was made by Nellie that resulted in the court establishing a cash equalization payment for a prior alimony and property award. The Nebraska Supreme Court's holding in *Pendleton v. Pendleton*, 242 Neb 675, 496 N.W.2d 499 (1993), provides sufficient authority for the district court to fashion a remedy in the manner described based upon the circumstances, including but not limited to, a specific request for the same which justified that result. Accordingly, having failed to provide this court with a record which supports the assigned error, this assignment fails.

### 3. TAX EXEMPTIONS

Lastly, Nellie argues the district court abused its discretion by not allocating tax exemptions for the children equally between the parties.

The Nebraska Supreme Court has explained:

> A tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony. In general, the custodial parent is presumptively entitled to the

federal tax exemption for a dependent child. But a court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires.

. . . The primary purpose for permitting a trial court to reallocate the exemption is to allow the party paying support to have more disposable income from which to make such payment.

*Anderson v. Anderson*, 290 Neb. 530, 540-41, 861 N.W.2d 113, 122-23 (2015).

Here, the district court awarded Daniel and Nellie joint physical custody of the parties' children with Nellie awarded legal custody. The district court ordered Daniel to pay $533 in child support for the three minor children and allowed Daniel to include tax exemptions on his income tax for two of his minor children because he has a higher income. The district court also allowed Nellie to take an exemption for the parties' third minor child. As the district court noted, Daniel has a higher income and is paying child support for the children, which falls in line with the primary purpose for reallocating an exemption--to allow the party paying child support to increase their disposable income to make child support payments. Accordingly, the district court did not abuse its discretion in allowing Daniel to receive two exemptions each year.

## VI. CONCLUSION

For the reasons contained herein, we affirm the district court.

AFFIRMED.