RALPH GOMEZ, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA EX REL. SHIRLEY LAREZ, DEFENDANT IN ERROR.

61 N. W. 2d 345

Filed December 11, 1953. No. 33391.

*Mothersead, Wright & Simmons*, for plaintiff in error.

*Bertrand V. Tibbels*, for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

The action out of which the appeal here arose originated in the county court of Scotts Bluff County, Nebraska. In an action in that court on May 10, 1952, in the name of the State of Nebraska ex rel. Shirley Larez, plaintiff, v. Ralph Gomez, defendant, Shirley Larez, who will hereinafter be referred to as plaintiff, filed a complaint containing the following charge: "Shirley Larez, being first duly sworn upon her oath, deposes and says that she is now pregnant with child, which will be born out of wedlock, and that Ralph Gomez, is the father thereof."

Ralph Gomez, who will be hereinafter referred to as the defendant, was arrested and brought before the county court where he entered into a recognizance for his appearance before the district court.

Subsequently on February 18, 1953, an information signed by plaintiff was filed in the district court. The charge in the information is as follows: "Of the Regular October, 1952 Term of the District Court of Scotts Bluff County, Nebraska, in the year A. D. 1953, comes Shirley Larez, relatrix, of Scotts Bluff County, Nebraska, prosecuting in the name of the State of Nebraska, information makes and gives the court to understand and be informed that she is the mother of a child born out of wedlock, and defendant is the father thereof."

On the same day the defendant was taken into custody and brought before the district court.

From recitals in a journal entry it appears that on the same day the defendant was given a hearing in the district court. The journal entry however was not filed until February 25, 1953.

It appears from the findings contained in the journal entry that on February 18, 1953, the defendant was arraigned, waived time to plead to the information, and admitted the paternity of the child in question, a female

born on August 1, 1952. A finding was made by the court in accordance with the admission of the defendant.

In pursuance of the findings the court ordered the defendant to pay for physicians' services $63.50, for hospital expenses $57, and $50 into court instanter for maintenance of the child and a like sum each month commencing March 1, 1953, and continuing until the child shall attain the age of 18 years or until marriage, whichever event occurs first. Defendant was also ordered to pay court costs in the amount of $34.

By order of court, the defendant was cited to appear on March 2, 1953, and show cause why he should not be punished for contempt of court for failure to make the payments required by the previous order.

On March 11, 1953, a hearing was had on the citation and the defendant was found and adjudged to be in contempt of court and he was remanded to the custody of the sheriff until he had purged himself of contempt by compliance with the order of the court.

On March 11, 1953, and presumably before the hearing, the attorney for defendant filed an affidavit in the nature of a pleading in which it was set forth in substance, among other things, that at the time of conception and birth of the child in question the plaintiff was a married woman and the wife of Ray Larez.

In the order in which the court adjudicated that the defendant was guilty of contempt of court the court found, as was asserted in the affidavit, that the plaintiff was a married woman.

The plaintiff concedes in her brief that the finding in this respect is correct and that at the time of conception and birth of the child in question she was a married woman.

Regardless of the admission however the finding of the court in this respect must be accepted as established since this case comes to this court without a bill of exceptions. In Goger v. Voecks, 156 Neb. 696, 57 N. W. 2d 621, it was said: "In the absence of a bill of ex-

ceptions it will be presumed that issues of fact presented by the pleadings were established by the evidence, that they were correctly decided, and in such situation the only issue that will be considered on appeal to this court is sufficiency of the pleadings to support the judgment." See, also, Horn v. Gooch Feed Mill Co., *ante* p. 125, 58 N. W. 2d 626.

No contention is made on this appeal that the question of the marital status was not sufficiently presented by pleading in the contempt proceedings.

The court found in this connection that the question of whether or not plaintiff was married could not be considered since it had not been previously raised; that the question was res judicata.

The defendant contends that the court at no time had jurisdiction over the subject matter of this action, therefore no order or adjudication made had any legal force and effect, and in consequence the finding of res judicata and the adjudication of contempt were erroneous.

It is correct to say that where the court does not have jurisdiction over the subject matter of an action that question may be raised at any stage of the proceeding, even on appeal, or in a collateral action. In re Estate of Hansen, 117 Neb. 551, 221 N. W. 694; Lippincott v. Wolski, 147 Neb. 930, 25 N. W. 2d 747, 169 A. L. R. 1236; Drieth v. Dormer, 148 Neb. 422, 27 N. W. 2d 843.

Whether or not the court had jurisdiction of the subject matter in this case inheres in a decision upon the primary question presented by this appeal. The primary question is that of whether or not a married woman under sections 13-101, R. S. 1943, and 13-113, R. S. Supp., 1951, may be heard to say that a man other than her husband is the father of a child of hers, born out of wedlock, and through legal processes compel support of such child. A determination of this question requires an examination of Chapter 13, R. S. 1943, as amended,

the antecedent legislation, and the earlier decisions of this court relating to the subject to which this chapter pertains.

Chapter 13, R. S. 1943, as amended, pertains to the subject of support of children born out of wedlock and processes to obtain support for such children. Section 13-113, R. S. Supp., 1951, permits a woman pregnant with a child which if born alive will be born out of wedlock or the mother of a child born out of wedlock to file a complaint accusing on oath or affirmation any person of being the father of the child. Such an accusation was filed herein by plaintiff with the defendant as the accused person. Nothing need be said about the processes immediately following the accusation here except that they appear to have been followed. This section contains no description or definition of a child born out of wedlock.

For the purposes of this case section 13-101, R. S. 1943, defines a child born out of wedlock as follows: "For the purposes of sections 13-101 to 13-116 a 'child born out of wedlock' is one whose parents were not married to each other at the time of its birth; * * *."

It conclusively appears as has already been made clear that plaintiff and defendant were not married to each other at the time of the birth of the child in question here.

Notwithstanding the language of the statute the defendant contends that there was no intention on the part of the Legislature to permit the mother of a child conceived and born during the time when she was married to assert and prove that the child was conceived and born out of wedlock within the meaning of this statute.

The legislative intent in this connection must be ascertained from what is contained in the act together with an analysis of previous legislation on the subject and the presumptive regard which was given to earlier pronouncement of this court since there is no record

in the legislative journals otherwise evincing the intention of the Legislature.

Section 13-113, R. S. Supp., 1951, is a provision amendatory of section 13-113, R. S. 1943, which in all particulars of consequence or concern here is the same as it was before amendment. The section was first enacted in 1941. Prior to that time there were statutory proceedings to deal with the subject matter contemplated by this section. The first procedure came into being in 1869. The provision appears as Chapter 28, sections 1 to 5, inclusive, of the General Statutes of 1873. The proceeding was termed a bastardy proceeding. Section 1 contains the following: "That on complaint made * * * by any woman * * * who shall hereafter be delivered of a bastard child, or being pregnant with a child, which, if born alive may be a bastard, accusing any person of being the father of such child, the justice of the peace shall take such accusation in writing, under oath, and shall thereupon issue his warrant * * *."

This provision remained in full force and effect until it was amended in 1875. The pertinent part of the provision as it appeared after 1875 was as follows: "On complaint made * * * by any unmarried woman * * * who shall hereafter be delivered of a bastard child, or being pregnant with a child which, if born alive, may be a bastard, accusing on oath or affirmation any person of being the father of said child, the justice shall take such accusation in writing, and thereupon issue his warrant * * *." § 9-101, Comp. St. 1929.

It is to be observed that the only significant difference between the quoted portion of the 1869 and the 1875 statutes is that in the former the rights under the statute are extended to "any woman" whereas in the latter they are extended to "any unmarried woman."

By legislative act of 1941 section 9-101, Comp. St. 1929, was repealed. This repeal of course carried with it the

description of the class of women, that is "unmarried woman" of the act of 1875.

Thus by the act of 1941 it was provided again by the liberal terms of the statute, as was true prior to 1875, that "any woman" be she married or unmarried, could make complaint that a man other than her husband was the father of child with which she was pregnant or which had been born to her alive.

The only significant difference in the law in this respect is that prior to 1941 children of the circumstances under consideration were denominated "bastards" whereas since that time they have been denominated "children born out of wedlock."

If therefore the literal language of the present statute is to be accepted as expressing the true intention of the Legislature it must be said that complaint and the processes of the statute were available to the plaintiff.

The defendant urges however that it was never the intention of the Legislature that a woman married at the time of conception or birth of her child should be able under section 13-113, R. S. Supp., 1951, to contend that her child was the child of a man not her husband.

We have been unable to find a case in this jurisdiction wherein this question was considered where it was directly at issue. However the question was discussed and very definite conclusions arrived at in a case wherein, under the act of 1875, the question of whether or not a woman who had conceived and given birth to a child while unmarried could make complaint under the statute that her child was a bastard after being subsequently married. The subject is considered in two opinions, appearing as Parker v. Nothomb, 65 Neb. 308, 91 N. W. 395, 60 L. R. A. 699, and on rehearing as 65 Neb. 315, 93 N. W. 851, 60 L. R. A. 701.

In the second opinion, on the question of whether or not a married woman could under the 1869 statute maintain such an action as this, the court said: "In that act it was provided that on complaint made by 'any woman'

etc., proceedings should be had for the purpose of compelling the father to support his illegitimate offspring. By the wording of the statute as then enacted, the question of the status of the woman making the complaint, with reference to her being married or unmarried at the time of the birth of the child, was not made the test of her right to maintain an action against the putative father for its support. Under such statute the questions to be determined were whether the woman, be she married or unmarried, had been delivered of a bastard child or was pregnant with a child which if born alive would be a bastard. * * * Thus by the old statute a married woman, although such at the time a bastard child was begotten and born, could maintain an action in bastardy for the support of such child. * * * To avoid this possible condition of things, we apprehend, was the sole aim and object of the legislature in amending the law as it did in 1875 by inserting the word 'unmarried' after the word 'any' so that the section should read that on complaint made by 'any unmarried woman,' instead of 'any woman,' as originally existing."

This case was decided in 1903. Two syllabus points in this case are based upon the legal propositions contained in this quotation from the opinion. They have not since been considered by this court according to the research which we have made. Therefore unless the statement be regarded as pure obiter dicta and therefore was not considered of any force and effect by the Legislature it is to be reasonably though not conclusively presumed that the act of 1941 was enacted with reference to and with the pronouncement in contemplation.

In State ex rel. Howard v. Marsh, 146 Neb. 750, 21 N. W. 2d 503, this court, in construing a constitutional provision which was unchanged after an opportunity had been afforded to do so, said: "There is another and persuasive, while not controlling, reason for following the precedent of this court. The interpretation by the court of the provision of the Constitution of 1875 in State

ex rel. McKelvie v. Wait, *supra,* (95 Neb. 806, 146 N. W. 1048) antedated the amendment to the Constitution of 1920 by six years. The constitutional convention which promulgated the amendment to this section of the Constitution for submission in 1920 had for its use and benefit the interpretation. It appears a reasonable presumption that if the convention was not satisfied with the interpretation it would have made clear its dissatisfaction by such change as was necessary to that end. We think this reasoning is especially sound since the convention did make changes in the provisions to meet the exigencies created by the constitutional changes."

It is true that legislative rather than constitutional change is involved here but the same rule applies in statutory interpretation and application. See, Kendall v. Garneau, 55 Neb. 403, 75 N. W. 852; Franzen v. Blakley, 155 Neb. 621, 52 N. W. 2d 833.

Also it is difficult to see how the reasoning should apply to failure to change and not as here to change.

We think that this rule must be regarded as having persuasive effect in the determination of the intent of the Legislature in the enactment of the act of 1941. The effect is to say that there was a restoration of the status which the court said existed prior to 1875 in the interpretation of the act of 1869.

It is urged by the defendant that this court has placed an interpretation upon the term "child born out of wedlock" as used in the act of 1941 which defeats the right of plaintiff as a married woman to maintain this action. In Campion v. Lattimer, 70 Neb. 245, 97 N. W. 290, a case decided in 1903, it was said: "The word 'bastard' in our language, both in its legal signification and in its literary use, has a well defined meaning. Webster defines it as follows: 'A natural child; a child begotten and born out of wedlock.' Now, in order that the child be begotten and born out of wedlock, it follows that the mother is an unmarried woman. In law the word is defined as follows: 'A child whose parents were not married to

each other at the time of its birth.' " The definition had no relation to any question for decision in the case.

The defendant substantially contends that the words "Now, in order that the child be begotten and born out of wedlock, it follows that the mother is an unmarried woman," expressed the intention of the Legislature in the act of 1941 when it employed the words "child born out of wedlock."

With this contention we are unable to agree. It could have had reference only to the law relating to bastards as it was declared to be by the court in 1903. This becomes abundantly clear from the fact that the case of Parker v. Nothomb, *supra,* was cited in the opinion. In 1903 a child could not be termed a bastard unless it was conceived by and born of an unmarried woman.

It follows then that the court had jurisdiction of the subject matter of the action.

The defendant charges that there was no valid complaint because it was signed by plaintiff, a married woman. In the light of what has been said with regard to her right to maintain the action and the right granted to her by the statute it must be said that this contention is without merit. Section 13-113, R. S. Supp., 1951, specifically grants the right to her to make complaint.

The remaining questions argued relate to matters of an evidentiary nature. They may not be considered here since there is no bill of exceptions. As already pointed out the findings of the court for this reason must be accepted as having been supported by the evidence.

The judgment of the district court is affirmed.

AFFIRMED.