Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/29/2017 09:12 AM CDT

Erin W., appellee, v.
Charissa W., appellant.
___ N.W.2d ___

Filed July 7, 2017.    No. S-16-958.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Evidence: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.

2. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Parent and Child: Paternity: Presumptions.** Under Nebraska common law, later embodied in Neb. Rev. Stat. § 42-377 (Reissue 2016), a child born during a marriage relationship is presumed to be the husband's child.

4. **Parent and Child: Paternity: Presumptions: Evidence.** The statutory presumption of legitimacy under Neb. Rev. Stat. § 42-377 (Reissue 2016) may be rebutted only by clear, satisfactory, and convincing evidence.

5. ____: ____: ____: ____. The testimony or declaration of a husband or wife is not competent to overcome the presumption of legitimacy under Neb. Rev. Stat. § 42-377 (Reissue 2016).

6. **Parent and Child: Paternity: Presumptions.** The presumption of legitimacy was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity.

7. **Divorce: Paternity: Presumptions: Evidence.** When the parties fail to submit evidence at the dissolution proceeding rebutting the presumption

of legitimacy, the dissolution court can find paternity based on the presumption alone.

8. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

9. ____. A trial court cannot commit error in resolving an issue never presented and submitted to it for disposition.

10. **Divorce: Paternity: Statutes.** Neb. Rev. Stat. § 43-1412.01 (Reissue 2016) appears in a series of statutes dealing with paternity of children born out of wedlock, but it also applies to adjudicated fathers of children born during a marriage who are seeking to disestablish paternity after a dissolution decree.

11. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

12. **Child Custody.** Joint physical custody should be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

Melissa Lang Schutt, of Fornoff & Schutt, P.C., for appellant.

Shane J. Placek, of Sidner Law, for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

STACY, J.

Charissa W. appeals from a decree of dissolution entered by the Dodge County District Court. Her assignments of error all center on the trial court's denial of her motions for court-ordered genetic testing, which she requested in an effort to rebut the presumption of legitimacy concerning a child born during the marriage. Our de novo review reveals no abuse of discretion, and we affirm.

## FACTS

Charissa and Erin W. were married in June 2013. Charissa was pregnant when the parties married. Before the wedding, Charissa told Erin the child might not be his. She explained that in addition to having intercourse with Erin, she also had intercourse with a man named "G.T." around the time the child was conceived.

Charissa and Erin married, and several months later, Charissa gave birth to a daughter. Based on the child's appearance at birth, Charissa and Erin believed Erin was her father and listed him as such on her birth certificate. As the child aged, her appearance led Charissa to suspect Erin was not her biological father.

The parties separated in September 2014. One year later, Erin filed a complaint for dissolution of marriage in the Dodge County District Court. Shortly after the dissolution action was filed, Charissa filed a motion for genetic testing seeking "an order requiring [Erin] and [Charissa] to participate in genetic testing to determine the paternity of [the child]." Charissa's motion for genetic testing did not cite or rely upon any particular authority.

Erin responded by filing what he termed "Plaintiff's Resistance to Defendant's Motion for Genetic Testing." In it, Erin asserted, among other things, that the child was born during the marriage and that he was presumed to be her father under Neb. Rev. Stat. § 42-377 (Reissue 2016).

After a hearing and briefing, the court overruled Charissa's motion for genetic testing. The court reasoned:

> [T]he child was born during the course of the marriage. [Erin] acknowledged paternity, has always held himself out to be the father of this child, and he resists [Charissa's] motion [for genetic testing]. [Charissa] placed [Erin's] name on the birth certificate and the parties were legally married prior to the child's birth confirming to the world that this child was their issue. Further, [Charissa] failed to challenge [Erin's] paternity

of the child for a period of approximately two years. Finally, [Charissa] has failed or refused to name some other person that she alleges to be the purported father of the child.

The case proceeded to trial.

At trial, Charissa testified she began to question whether Erin was the child's father when, at 6 months of age, the child's appearance began to change. Charissa believed G.T. was the child's father based on the time of conception and the fact that G.T. has a son who "looks identical" to the child. Charissa was asked why she had not asked G.T. to submit to a private paternity test, and she replied, "I just [didn't] want him a part of [the child's] life. He hasn't been in [her] life since birth . . . ." Charissa also testified that she wanted to prove Erin was not the child's biological father so that Charissa's current boyfriend could eventually adopt her. When asked why she thought it was in the child's best interests to prove Erin was not her father, Charissa testified: "Well, when she gets older, she's going to ask questions, wondering why she [does not look like] both of us, and I just don't want to . . . I don't know, lessen the confusion."

At trial, Charissa took somewhat inconsistent positions regarding custody and child support. Regarding custody, she testified that "in the event that the Court finds [Erin] is the father," she was "agreeable to having the [court order] joint custody." But Charissa requested that if the court determined she had rebutted the presumption of legitimacy, the court award her full custody of the child, while still giving Erin overnight visitation every other weekend. Charissa asked that Erin be ordered to pay child support for the child regardless of whether the presumption of legitimacy was rebutted.

Erin testified that he never questioned whether he was the child's father and did not want genetic testing. Erin testified that he signed the child's birth certificate when she was born and has actively parented her ever since.

The evidence at trial showed that both Charissa and Erin held Erin out as the child's father and that Erin was actively involved in her upbringing. He changed her diapers, fed her, bathed her, and put her to sleep. He provided financial assistance, child care, and health insurance for her. When the parties separated in 2014, they agreed to share parenting time by exchanging the child every 2 to 3 days. After the dissolution action was filed in 2015, the parties agreed to the entry of a temporary order that granted them joint legal and physical custody of the child and equal parenting time on an alternating 5-day schedule. Charissa testified that Erin was a good father, loved the child, and provided appropriate care for her.

During trial, Charissa renewed her request for genetic testing, again without citation to any particular statute. The court again overruled the motion for the reasons set out in its earlier order.

After trial, the court entered a decree that found Charissa had not rebutted the statutory presumption of legitimacy, and the court made an express finding that Erin was the child's father. The court awarded the parties joint legal and physical custody of the child and adopted Erin's proposed parenting plan, which continued the same alternating 5-day parenting schedule the parties had followed throughout the pendency of the divorce. Erin was ordered to pay child support in the amount of $198 per month.

Charissa timely appealed, and we moved the case to our docket on our own motion pursuant to our statutory authority to regulate the dockets of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Charissa assigns, restated, that the district court erred in (1) denying her requests for court-ordered genetic testing,

---

[1] *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001).

(2) finding the presumption of legitimacy was not rebutted by the evidence presented, and (3) ordering joint custody of the child despite evidence that Erin is not her biological father.

## STANDARD OF REVIEW

[1,2] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.[2] When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[3]

## ANALYSIS

[3] Under Nebraska common law, later embodied in § 42-377, a child born during a marriage relationship is presumed to be the husband's child. Section 42-377 provides in relevant part: "Children born to the parties, or to the wife, in a marriage relationship . . . shall be legitimate unless otherwise decreed by the court, and in every case the legitimacy of all children conceived before the commencement of the suit shall be presumed until the contrary is shown."

[4-7] The statutory presumption of legitimacy may be rebutted only by clear, satisfactory, and convincing evidence.[4] This court has long held that the testimony or declaration of a husband or wife is not competent to overcome this presumption.[5]

---

[2] *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017).

[3] *Id.*

[4] See *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[5] *Id.*; *Helter v. Williamson*, 239 Neb. 741, 478 N.W.2d 6 (1991); *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985); *Perkins v. Perkins*, 198 Neb. 401, 253 N.W.2d 42 (1977).

We have reasoned that "'"[t]he presumption [of legitimacy] was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity. . . ."'"[6] When the parties fail to submit evidence at the dissolution proceeding rebutting the presumption of legitimacy, the dissolution court can find paternity based on the presumption alone.[7]

## DENIAL OF GENETIC TESTING WAS NOT ABUSE OF DISCRETION

Charissa sought to overcome the statutory presumption that Erin is the child's father by asking the court to compel genetic testing, against Erin's wishes. And although she sought to rebut Erin's presumed paternity, she did not seek to establish paternity in another man. Simply put, Charissa sought to illegitimize the child through court-ordered genetic testing, and Erin opposed such testing. The question presented is whether, under these circumstances, the district court abused its discretion in denying Charissa's motions for court-ordered testing.

We begin by noting that Charissa's motions for genetic testing were not premised on any particular statute or discovery rule. However, in her briefing to this court, Charissa argues the district court should have granted her motions under either Neb. Rev. Stat. § 43-1412.01 (Reissue 2016) or Neb. Rev. Stat. § 43-1414 (Reissue 2016).

[8,9] Our de novo review of the record shows Charissa relied to some extent on § 43-1412.01 at trial, so we will address the applicability of that statute on appeal. But we can find nothing in the record indicating Charissa ever relied on § 43-1414 as support for her motions to order genetic testing. An appellate court will not consider an issue on appeal that

---

[6] *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 863, 573 N.W.2d 425, 434 (1998).

[7] *Stacy M. v. Jason M.*, 290 Neb. 141, 858 N.W.2d 852 (2015).

was not presented to or passed upon by the trial court.[8] This is because the trial court cannot commit error in resolving an issue never presented and submitted to it for disposition.[9] Because Charissa never presented the issue to the trial court, we decline to address whether § 43-1414 has any application on these facts.

[10] Section 43-1412.01 is the statute governing disestablishment of paternity. It provides in relevant part:

> An individual may file a complaint for relief and the court may set aside a final judgment . . . or any other legal determination of paternity if a scientifically reliable genetic test performed in accordance with sections 43-1401 to 43-1418 establishes the exclusion of the individual named as a father in the legal determination.

Even though § 43-1412.01 appears in a series of statutes dealing with paternity of children born out of wedlock, we have expressly held that § 43-1412.01 also applies to adjudicated fathers of children born during a marriage who are seeking to disestablish paternity after a dissolution decree.[10]

In this case, Charissa sought to rely upon § 43-1412.01 before a decree had been entered. But the disestablishment provisions of § 43-1412.01 presuppose a legal determination of paternity and are not applicable until after a final judgment or other legal determination of paternity has been entered. The provisions of § 43-1412.01 were inapplicable prior to the decree and did not require the district court to order genetic testing.

Charissa's motions for court-ordered genetic testing were not premised on any applicable statutory provisions or discovery rules. As observed earlier, Charissa was requesting court-ordered testing in an effort to illegitimize a child born during the marriage without establishing paternity in another,

---

[8] *Walsh v. State*, 276 Neb. 1034, 759 N.W.2d 100 (2009).

[9] *Id.*

[10] *Stacy M. v. Jason M., supra* note 7.

and Erin opposed such testing. Under these circumstances, we find no abuse of discretion in the trial court's decision to overrule Charissa's motions for genetic testing. Her first assignment of error has no merit.

### PRESUMPTION OF LEGITIMACY WAS NOT REBUTTED AT TRIAL

Charissa next argues that even in the absence of genetic testing, "she has successfully rebutted th[e] presumption" that Erin is the child's father.[11] We disagree.

As noted earlier, the statutory presumption of legitimacy may be rebutted only by clear, satisfactory, and convincing evidence.[12] The testimony or declaration of a husband or wife is not competent to overcome this presumption.[13] And when the parties fail to submit competent evidence at the dissolution proceeding sufficient to rebut the presumption of paternity, the dissolution court can find paternity based on the presumption alone.[14]

Charissa's evidence at trial consisted of her own testimony that she had intercourse with G.T. around the time the child was conceived and photographs purporting to show the change in the child's appearance over time and similarity in appearance to G.T.'s son. The district court found that G.T. was not called to testify and that Charissa's uncorroborated testimony was not competent under our case law. It further found that the photographs of the child were not sufficient to rebut the presumption that Erin was her father.

Our de novo review convinces us the district court correctly found that the evidence at trial was not sufficient to rebut the presumption of legitimacy. Charissa's uncorroborated testimony of G.T.'s paternity is not competent evidence, and

---

[11] Brief for appellant at 17.

[12] *Alisha C. v. Jeremy C., supra* note 4.

[13] *Id.*

[14] *Id.*

the only other evidence offered on the issue—photographs purporting to show the child's change in appearance and her physical similarity to G.T.'s son—was not sufficiently convincing to rebut the statutory presumption. Charissa's second assignment of error lacks merit.

## No Abuse of Discretion in
### Awarding Joint Custody

In her final assignment of error, Charissa asserts the district court erred in awarding Charissa and Erin joint legal and physical custody of the child. Her argument is largely a reiteration of her nonmeritorious claim that the court erred in not compelling Erin to submit to genetic testing. Our de novo review of the record reveals no abuse of discretion in the court's joint custody award.

[11,12] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.[15] We have held that joint physical custody should be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.[16]

During the pendency of this divorce action, Charissa and Erin agreed to the entry of a temporary order granting them joint legal and physical custody of the child and providing equal parenting time on an alternating 5-day schedule. The parties operated successfully under this joint custody arrangement for nearly a year, and there is nothing in the record

---

[15] *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

[16] *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

suggesting the parties or the child experienced difficulty with the arrangement. The parenting plan ultimately adopted by the district court and included in the decree continued the same joint custody and the same parenting time schedule the parties had agreed to previously; the court expressly found the plan was in the child's best interests.

At trial, Charissa testified that Erin was a good father, loved the child, and provided appropriate care for her. She further conceded that if the court were to find she had failed to overcome the presumption of Erin's paternity, she was "agreeable to having the [court order] joint custody."

On this record, we find no abuse of discretion in the district court's decision to award joint custody. Charissa's third assignment of error is meritless.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.