Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/25/2020 08:08 AM CDT

State of Nebraska on behalf of Miah S., a minor
child, appellee, v. Ian K., appellee, and
Aaron S., appellant.

___ N.W.2d ___

Filed July 2, 2020.    No. S-19-937.

1. **Statutes: Appeal and Error.** The meaning and interpretation of statutes are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
2. **Paternity: Statutes.** Paternity proceedings are purely statutory, and because such statutes modify the common law, they must be strictly construed.
3. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
4. **Paternity: Statutes.** An action to establish paternity is statutory in nature, and the authority to bring such action must be found in the statute.
5. **Paternity.** Read together, Neb. Rev. Stat. §§ 43-1411 and 43-1401(1) (Reissue 2016) authorize the State to bring an action to establish the paternity of a child born out of wedlock.

Appeal from the Separate Juvenile Court of Lancaster County: Reggie L. Ryder, Judge. Vacated and remanded with directions to dismiss.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellant.

Patrick Condon, Lancaster County Attorney, and Haley N. Messerschmidt for appellee State of Nebraska.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In this case, the State filed a complaint seeking to disestablish the paternity of Aaron S. to a child born during his marriage to the child's mother and to establish paternity in another man. The separate juvenile court of Lancaster County granted the requested relief, and Aaron appeals. Because we find the State was not statutorily authorized to bring the action, we vacate the order and remand the cause with directions to dismiss the State's complaint.

## FACTS

Cameo S. and Aaron S. were married on July 15, 2018. Approximately 10 months later, Cameo gave birth to a daughter. Aaron was present for the birth and was listed as the father on the child's birth certificate.[1]

Genetic testing performed a few months later showed Ian K. was the child's biological father. Based on the test results, the State filed a complaint in the district court for Lancaster County seeking to establish Ian's paternity. On the State's motion, the action was transferred to the separate juvenile court, which already had jurisdiction over the child due to an abuse/neglect adjudication[2] involving Cameo but not Aaron.[3]

---

[1] See Neb. Rev. Stat. § 71-640.01 ((Reissue 2018) (when mother married at time of conception or birth, name of husband entered on birth certificate as child's father unless court establishes paternity in another or mother and husband execute affidavits attesting husband is not father).

[2] See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016).

[3] See, § 43-247(10) (juvenile court has jurisdiction over "[t]he paternity or custody determination for a child over which the juvenile court already has jurisdiction"); Neb. Rev. Stat. § 43-1411.01 (Cum. Supp. 2018) (county court or separate juvenile court may determine paternity if already has jurisdiction over child).

STATE'S PATERNITY ACTION

The State's complaint alleged that during the marriage of Cameo and Aaron, a child was born, but the child's biological father was Ian, not Aaron. The State prayed for an order "finding that [Aaron] is not the biological father of said minor child [and] that [Ian] is the biological father of said child." It is undisputed that at the time the child was born, and at the time of trial in this matter, Cameo and Aaron were married.

At trial, a caseworker from the Department of Health and Human Services (DHHS) testified the child became a ward of the State immediately after birth, and the child had never lived with Cameo or Aaron. The DHHS caseworker testified that Aaron had always expressed a desire to be the child's father and had visited the child regularly while she was in foster care. According to the caseworker, Aaron stopped visiting for a time after he learned of the genetic test results, but he had resumed visitation with the child by the time of trial.

The caseworker testified that Ian had no contact with the child and had "strenuously advocated" to be allowed to relinquish whatever rights he may be found to have with respect to the child. The caseworker did not consider either Aaron or Ian an "ideal father," but she testified that if Aaron remained the legal father after the hearing, DHHS would provide him services to address "whatever issues" he may be found to have.

Aaron testified he wanted to remain the child's father and was willing to participate in any services DHHS could offer him. He expressly stated he was willing to take full responsibility for the child, including financial responsibility. Aaron testified that he no longer wished to be married to Cameo and had commenced divorce proceedings that morning. Our appellate record does not contain any other information regarding the status of the dissolution proceeding.

At the conclusion of the evidence, the State asked the court to "dis-establish" Aaron as the child's legal father and to establish Ian as the child's father so he could effectively relinquish his rights. The State acknowledged that Aaron wanted to

remain the child's father, but it suggested without elaboration that Aaron's goal was to "circumvent the adoption process."

Ian's counsel asked the court to dismiss the State's paternity action, arguing that despite the results of the genetic testing, Ian had not signed an acknowledgment of paternity and Aaron remained the child's legal father. Aaron's counsel agreed, arguing that at the time of trial, Aaron was the child's legal father and wanted to remain so.

## Court's Order

The separate juvenile court entered an order which purported to disestablish Aaron as the child's father and to establish Ian as the child's biological father. As to Aaron, the court found:

> While he was the legal father of [the child] at her birth, the evidence clearly and convincingly shows that, when considering her age [and] her previous relationship with [Aaron] there is no significant evidence that [the child] could benefit from establishing paternity with [Aaron and] it is in the best interest of [the child] to disestablish [Aaron] as her legal father.

And as to Ian, the court found "he is also not a very appealing choice to be the legal and/or biological father" of the child. But the court found the genetic test results clearly established Ian as the child's biological father, and it granted the State the relief sought in its complaint.

Aaron timely appealed, and we moved the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Aaron assigns, summarized, that the juvenile court erred in disestablishing his paternity and in establishing Ian as the child's father.

## STANDARD OF REVIEW

[1] The meaning and interpretation of statutes are questions of law for which an appellate court has an obligation to reach

an independent conclusion irrespective of the decision made by the court below.[4]

## ANALYSIS

Under Nebraska common law, now embodied in Neb. Rev. Stat. § 42-377 (Supp. 2019), children born to parties in a marriage relationship "shall be legitimate unless otherwise decreed by the court."[5] In this case, it is undisputed that Cameo and Aaron were married when the child was born. Neither Cameo, Aaron, nor Ian sought to delegitimize the child or to challenge Aaron's status as the child's legal father. Instead, the State filed the operative complaint expressly seeking to "disestablish" Aaron as the child's father and to establish Ian as the biological father.

The question presented here is a narrow one: Is the State statutorily authorized to bring a paternity action seeking to delegitimize a child born during a marriage relationship in order to establish biological paternity in another man?

[2,3] To answer this question, we examine the statutes that govern actions to establish and disestablish paternity. In doing so, we remember that paternity proceedings are purely statutory, and because such statutes modify the common law, they must be strictly construed.[6] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[7]

Civil proceedings to establish the paternity of a child are governed by Neb. Rev. Stat. §§ 43-1411 (Reissue 2016) and 43-1411.01 (Cum. Supp. 2018). Section 43-1411 sets out the circumstances under which a paternity action may be instituted

---

[4] See *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

[5] See, also, Neb. Rev. Stat. § 43-1406(2) (Reissue 2016) ("[a] child whose parents marry is legitimate").

[6] See *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014).

[7] *In re Guardianship of Eliza W.*, 304 Neb. 995, 938 N.W.2d 307 (2020).

and identifies who may institute such an action. Those authorized to bring an action to establish paternity under § 43-1411 include the mother or the alleged father of a child, the guardian or next friend of a child, and the State. Section 43-1411.01 dictates in which courts an action to establish paternity may be filed.

Civil proceedings to disestablish paternity are governed by Neb. Rev. Stat. § 43-1412.01 (Reissue 2016), which provides in relevant part:

An individual may file a complaint for relief and the court may set aside a final judgment, court order, administrative order, obligation to pay child support, or any other legal determination of paternity if a scientifically reliable genetic test performed in accordance with sections 43-1401 to 43-1418 establishes the exclusion of the individual named as a father in the legal determination.

In *Alisha C. v. Jeremy C.*,[8] we held that the plain language of § 43-1412.01 is not limited to setting aside legal determinations of paternity regarding children born out of wedlock, but is broad enough to also encompass disestablishing legal determinations regarding children born during a marriage.

In the instant case, we requested supplemental briefing addressing whether the State is an "individual" authorized to bring a civil proceeding to disestablish a child's paternity under § 43-1412.01. Having received and considered that briefing, it is notable that the parties agree the State is not an "individual" who may file a complaint to disestablish paternity under § 43-1412.01.

But the State, in its supplemental briefing, contends it did not bring an action to disestablish paternity under § 43-1412.01, but, rather, it initiated a proceeding to establish paternity under § 43-1411. The State argues it is one of several parties expressly authorized under that statute to institute such an action.

---

[8] *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

It is true that § 43-1411 authorizes the State to bring a civil proceeding "to establish the paternity of a child." But the definition of "child" as used in § 43-1411 is governed by Neb. Rev. Stat. § 43-1401 (Reissue 2016), which provides in relevant part:

> For purposes of sections 43-1401 to 43-1418:
>
> (1) Child shall mean a child under the age of eighteen years born out of wedlock;
>
> (2) Child born out of wedlock shall mean a child whose parents were not married to each other at the time of its birth, except that a child shall not be considered as born out of wedlock if its parents were married at the time of its conception but divorced at the time of its birth. The definition of legitimacy or illegitimacy for other purposes shall not be affected by the provisions of [sections 43-1401 to 43-1418].

The statutory definitions of the terms "child" and "child born out of wedlock" were enacted in 1994 and have remained unchanged since that time.[9] Because the State relies exclusively on § 43-1411 as the statutory authority for commencing this action, we find these statutory definitions are dispositive.

[4,5] An action to establish paternity is statutory in nature, and the authority to bring such action must be found in the statute.[10] Read together, §§ 43-1411 and 43-1401(1) authorize the State to bring an action to establish the paternity of a child born out of wedlock. The child in this case was not born out of wedlock; she was born during the marriage of Cameo and Aaron. Consequently, when the State filed this action, the child was the legitimate daughter of Cameo and Aaron and was not a child on whose behalf the State was authorized to initiate a civil proceeding to establish paternity under § 43-1411. To the extent our 1998 opinion in *State on behalf of Hopkins v. Batt*[11]

---

[9] See 1994 Neb. Laws, L.B. 1224.

[10] See *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016).

[11] *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998).

held otherwise, we expressly overrule it as contrary to the plain language of the governing statutes.

The State's lack of statutory authority to bring this paternity action under § 43-1411 requires that we vacate the separate juvenile court's order in all respects and remand the cause with directions to dismiss the State's complaint.

## CONCLUSION

Because the child at issue in this case was not born out of wedlock and was instead the legitimate child of Aaron, the State lacked statutory authority to institute an action under § 43-1411 to establish the child's paternity. The order of the separate juvenile court is vacated, and the cause is remanded with directions to dismiss the State's complaint.

VACATED AND REMANDED WITH
DIRECTIONS TO DISMISS.