Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/10/2023 09:06 AM CST

APURBA CHATTERJEE, THIRD-PARTY PLAINTIFF,
APPELLEE AND CROSS-APPELLEE, V. INDRAJA
CHATTERJEE, APPELLEE AND CROSS-APPELLANT,
AND INDRANEEL CHATTERJEE, THIRD-PARTY
DEFENDANT, APPELLANT.

___ N.W.2d ___

Filed March 10, 2023.   No. S-22-194.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Statutes: Appeal and Error.** The meaning and interpretation of statutes are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
3. **Standing: Jurisdiction.** A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.
4. **Standing: Jurisdiction: Parties.** Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.
5. **Standing: Parties.** To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.
6. ____: ____. A plaintiff does not generally have standing to bring a case on behalf of a third party.
7. ____: ____. The focus of the standing inquiry is not whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim.
8. **Parent and Child: Paternity: Presumptions: Evidence.** The presumption set forth in Neb. Rev. Stat. § 42-377 (Cum. Supp. 2022) may be rebutted by clear, satisfactory, and convincing evidence.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Vacated and dismissed.

Jeffrey A. Wagner, of Wagner, Meehan & Watson, L.L.P., for appellant.

Scott Hahn and David Pontier, of Koenig | Dunne, P.C., L.L.O., for appellee Apurba Chatterjee.

Francis E. Younes, of High & Younes, L.L.C., for appellee Indraja Chatterjee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Indraneel Chatterjee appeals and Indraja Chatterjee cross-appeals from the district court's order establishing paternity of the minor children in Apurba Chatterjee. We vacate the order and dismiss.

## FACTUAL BACKGROUND

Apurba filed a complaint on March 18, 2020, citing Neb. Rev. Stat. § 43-1401 et seq. (Reissue 2016 & Cum. Supp. 2018), seeking to establish paternity, custody, and support. He alleged that Indraja was pregnant with twins and that based on the approximate date of conception, he believed he might be the biological father of the children. He also sought genetic testing in that complaint. Apurba, despite sharing a last name with husband and wife Indraneel and Indraja, is not related to them. Subsequently, Apurba moved to add Indraneel as a third-party defendant and sought to file an amended complaint.

Apurba's motion for genetic testing of the twins was granted, as was his motion to add Indraneel as a party and his

motion to file an amended complaint. That complaint prayed, as had the original complaint, that if testing showed that Apurba was the biological father, Indraneel be disestablished as the twins' father and an order establishing Apurba's paternity be entered, as well as an order setting forth custody, parenting time, and support.

The twins were born in June 2020. At the time of the births, Indraneel and Indraja were married. Genetic testing was performed, and on June 11, results were returned indicating that there was a 99.9-percent statistical probability that Apurba was the biological father of the minor children. Based on information provided by Indraneel and Indraja at the hospital where the children were born, birth certificates for the minor children were issued on July 6, 2020, naming Indraneel as the children's father.

On March 21, 2022, a decree of paternity, custody, and support was entered by the district court. That decree found that Indraja was the children's biological mother and that Apurba was the children's biological father. The court ordered joint legal and physical custody of the children, set forth a parenting plan and vacation schedule, and made several orders surrounding support and expenses, including ordering Apurba to pay $833 per month in child support.

Indraneel appeals from this determination, and Indraja cross-appeals. We moved this case to our docket through our power to regulate the docket of this court and the Nebraska Court of Appeals.

ASSIGNMENTS OF ERROR

Indraneel assigns that the district court erred in failing to grant his motion to dismiss. On cross-appeal, Indraja assigns that the district court erred in (1) denying Indraneel's motion to dismiss, (2) denying Indraja's motion to dismiss, (3) granting Apurba's partial motion for summary judgment, and (4) exercising jurisdiction over the subject matter of this action.

## STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[1]

[2] The meaning and interpretation of statutes are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[2]

## ANALYSIS

This appeal raises the question of whether Nebraska's paternity statutes allow for an alleged father to establish paternity over a child born to a married couple. In addition to the argument by both Indraneel and Indraja that the district court erred in establishing paternity in Apurba, Indraja contends that the district court lacked jurisdiction over Apurba's request.

We understand Indraja's contention as challenging Apurba's standing to seek the establishment of paternity. We agree and conclude that as a stranger to the marriage of Indraneel and Indraja, Apurba lacked standing to challenge the legitimacy of children born to the marriage. We accordingly dismiss this appeal for lack of jurisdiction.

Civil proceedings to *establish* the paternity of a child are governed by §§ 43-1411 and 43-1411.01. Section 43-1411 sets out the circumstances under which a paternity action may be instituted and identifies who may institute such an action. Section 43-1411 provides in relevant part:

> A civil proceeding to establish the paternity of a child may be instituted, in the court of the district where the child is domiciled or found or, for cases under the Uniform Interstate Family Support Act, where

---

[1] *State on behalf of Marcelo K. & Rycki K. v. Ricky K.*, 300 Neb. 179, 912 N.W.2d 747 (2018).

[2] *State on behalf of Miah S. v. Ian K.*, 306 Neb. 372, 945 N.W.2d 178 (2020).

the alleged father is domiciled, by (1) the mother or the alleged father of such child, either during pregnancy or within four years after the child's birth, unless (a) a valid consent or relinquishment has been made pursuant to sections 43-104.08 to 43-104.25 or section 43-105 for purposes of adoption or (b) a county court or separate juvenile court has jurisdiction over the custody of the child or jurisdiction over an adoption matter with respect to such child pursuant to sections 43-101 to 43-116 or (2) the guardian or next friend of such child or the state, either during pregnancy or within eighteen years after the child's birth.

Conversely, civil proceedings to *disestablish* paternity are governed by § 43-1412.01, which provides in relevant part:

An individual may file a complaint for relief and the court may set aside a final judgment, court order, administrative order, obligation to pay child support, or any other legal determination of paternity if a scientifically reliable genetic test performed in accordance with sections 43-1401 to 43-1418 establishes the exclusion of the individual named as a father in the legal determination.

Apurba argues, simply stated, that he is the alleged father to the children whose paternity is at issue in this case and that thus, he can, under § 43-1411, maintain an action to establish his paternity. He argues that he need not disestablish Indraneel's paternity because it was never legally established. Apurba further contends that the results of the DNA test show he is the biological father of Indraja's children by a likelihood of over 99 percent and that thus, a rebuttable presumption exists under § 43-1415 that he is their father.

[3-7] A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.[3]

---

[3] *Alpha Wealth Advisors v. Cook, ante* p. 237, 983 N.W.2d 526 (2023).

Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[4] To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[5] A plaintiff does not generally have standing to bring a case on behalf of a third party.[6] The focus of the standing inquiry is not whether the claim the plaintiff advances has merit; it is on whether the plaintiff is the proper party to assert the claim.[7]

We agree with Apurba that Indraneel's paternity was never "legally" established and thus is not capable of being disestablished by § 43-1412.01.[8] But we disagree that Apurba otherwise has standing to challenge Indraneel's status as the father of Indraja's children.

Apurba relies on § 43-1411 and argues that on the basis of statements made by Indraja and the results of the DNA test ordered by the court, he is the alleged father of Indraja's children. But even assuming the truth of these allegations, the children do not meet the definition of a child for purposes of § 43-1411. Put simply, Apurba focuses on whether he is an alleged father without also considering that his standing is limited by the term "child."

And that term, for purposes of §§ 43-1401 to 43-1418, means "a child under the age of eighteen years born out of

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] Cf. *Erin W. v. Charissa W.*, 297 Neb. 143, 897 N.W.2d 858 (2017), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffrey T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

wedlock."[9] A "[c]hild born out of wedlock" shall mean "a child whose parents were not married to each other at the time of its birth, except that a child shall not be considered as born out of wedlock if its parents were married at the time of its conception but divorced at the time of its birth."[10]

[8] Because of the operation of Neb. Rev. Stat. § 42-377 (Cum. Supp. 2022), these children are not considered to be born out of wedlock. Section 42-377 sets forth the legal presumption of the legitimacy of children, providing:

> Children born to the parties, or to either spouse, in a marriage relationship which may be dissolved or annulled pursuant to sections 42-347 to 42-381 shall be legitimate unless otherwise decreed by the court, and in every case the legitimacy of all children conceived before the commencement of the suit shall be presumed until the contrary is shown.

We have held that the presumption set forth in § 42-377 may be rebutted by clear, satisfactory, and convincing evidence.[11]

Under the operation of § 42-377, Indraja's children are presumed to be legitimate and do not meet the definition of children born out of wedlock. This decision is consistent with prior case law.

In *State on behalf of Miah S. v. Ian K.*,[12] we interpreted §§ 43-1401(1) and 43-1411 as dictating that a child born during a marriage was not "born out of wedlock" as defined by § 43-1401(2). There, the State sought to invoke § 43-1411 to establish the biological paternity of an outsider to a marriage to which a child had been born. This court explained that the definitions of "[c]hild"[13] and "[c]hild born out of

---

[9] § 43-1401(1).

[10] § 43-1401(2).

[11] See *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[12] *State on behalf of Miah S. v. Ian K., supra* note 2.

[13] § 43-1401(1).

wedlock"[14] were, by the opening clause of § 43-1401,[15] expressly applied to § 43-1411. Although the holding was limited to a § 43-1411 action brought by the State, the reasoning applies equally here.

And where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.[16] This principle applies here to stand for the continued validity of our interpretations of §§ 43-1401 and 43-1411, neither of which has been amended in any way that might contradict our decision in *State on behalf of Miah S.*

Moreover, we are unpersuaded by Apurba's reliance on *Gomez v. State ex rel. Larez*,[17] where we were asked to determine whether a married woman could seek to establish paternity in someone other than her husband. In that case, a married woman gave birth to a child she alleged was fathered by Ralph Gomez, who was not her husband. The married woman sought, through action of the State, to have the paternity established in Gomez. Gomez objected to the court's jurisdiction, arguing that a married woman could not bring an action for paternity. Gomez seemed to acknowledge that the language of the definition itself did not support his position, but he nevertheless contended that the Legislature did not intend for married women to assert and prove that their child was born out of wedlock.

We disagreed. We set forth the history of the statute setting forth the establishment of paternity, noting that upon enactment "'any woman'" could maintain a suit for paternity; by

---

[14] § 43-1401(2).

[15] § 43-1401 ("[f]or purposes of sections 43-1401 to 43-1418").

[16] *Bogue v. Gillis*, 311 Neb. 445, 973 N.W.2d 338 (2022).

[17] *Gomez v. State ex rel. Larez*, 157 Neb. 738, 61 N.W.2d 345 (1953).

1875, the Legislature had revised the statutory language to provide a cause of action for "'any unmarried woman,'" and in 1941, the Legislature passed another statutory revision indicating that "'any woman'" could make such a complaint.[18] It was apparent from this history that a married woman could assert a claim for paternity on the basis of a child fathered by a man who was not her husband and that this child was to be considered as one born out of wedlock.

While *Gomez* stands for the proposition that a married woman could attempt to establish paternity in someone other than her husband, it does not opine as to whether a stranger to a marriage could do so. We conclude that one cannot. Given the statutory presumption in favor of the legitimacy of children born during the parties' marriage, and the lack of statutory protection provided to parties outside of that relationship, we determine that Nebraska's existing statutes prioritize the marital relationship.

We agree with the dissent's observation that situations like this one present difficult policy decisions. But it is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state.[19] In another context, we have said that we highlight competing policy arguments "not to choose one side or the other, but to observe that once the Legislature has enacted a statute, the resolution of those arguments is not our job."[20] Here, the parties essentially dispute whether biology or marital status is paramount. Ultimately, that policy question belongs to the Legislature and not with this court. As such, we hold that Apurba lacks standing to seek a finding of paternity and that his petition must be dismissed.

---

[18] *Id.*, 157 Neb. at 743, 744, 61 N.W.2d at 348.

[19] *Bogue v. Gillis, supra* note 16.

[20] *Id.* at 461, 973 N.W.2d at 348.

CONCLUSION

The decision of the district court establishing paternity in Apurba is vacated, and his petition seeking the establishment of paternity is dismissed.

Vacated and dismissed.

Funke, J., dissenting.

I respectfully dissent from the majority opinion of the court. I agree with the majority's finding that Indraneel Chatterjee's paternity of the minor children has not been established, but I disagree with the majority's finding that Apurba Chatterjee has no standing to bring his paternity action, which he filed prior to the birth of the minor children. Instead, I would find that because he is an "alleged father" under the relevant statute and because the minor children are "children born out of wedlock," Apurba has standing to bring this action.

Nebraska law, via Neb. Rev. Stat. § 42-377 (Cum. Supp. 2022), creates a presumption that a married mother's husband is the father of her child if the child is born during the marriage. The presumption "merely creates a default assumption absent sufficient evidence to the contrary"[1] and may be rebutted by clear, satisfactory, and convincing evidence.[2] With the advent of genetic testing, this marital presumption of paternity can now be overcome by scientifically reliable evidence that the husband is not the biological father of the child.[3] Genetic testing can also establish paternity of children born out of wedlock.[4] Neb. Rev. Stat. § 43-1411 (Reissue 2016) provides, as relevant, that a civil proceeding to establish the paternity of a child may be brought by an "alleged father." At issue is whether the presumption in § 42-377 operates to eclipse

---

[1] *Alisha C. v. Jeremy C.*, 283 Neb. 340, 356, 808 N.W.2d 875, 887 (2012).

[2] *Alisha C., supra* note 1.

[3] *Id.*

[4] *Id.*

the standing granted to an "alleged father" by § 43-1411. Unlike the majority, I believe that it does not.

We need not, for purposes of our standing analysis, determine whether Apurba has established paternity by clear, satisfactory, and convincing evidence. As we have previously explained, because standing focuses "'on the party, not the claim itself,'" when considering standing, "the legal and factual validity of the claim presented must be assumed."[5] And assuming that Apurba's claim has merit and that he would be entitled to establish paternity, he is the proper party to assert that claim and request such relief.[6]

In *Heiden v. Norris*,[7] asserted grandparents filed a complaint to establish grandparent visitation with minor children after the children's mother died and visitation was granted. The children's father appealed, arguing that the district court erred in finding that the asserted grandparents had standing to bring the action.[8] In particular, the children's father argued that the asserted grandparents, who had raised the children's mother, lacked standing to bring the action under Nebraska's grandparent visitation statutes because they were not the "biological or adoptive parent[s] of [the children's] biological or adoptive parent" as required by those statutes.[9] In rejecting this argument, we explained:

> [The children's father] conflates standing with the merits of the [asserted grandparents'] claim. Under the doctrine of standing, a court may decline to determine the merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. But as we have said previously, the focus of

---

[5] See *Heiden v. Norris*, 300 Neb. 171, 174, 912 N.W.2d 758, 761 (2018).

[6] Cf. *Heiden, supra* note 5.

[7] *Id.*

[8] *Id.*

[9] *Id.*

the standing inquiry is "on the party, not the claim itself." For that very reason, in considering standing, the legal and factual validity of the claim presented must be assumed. Here, if the [asserted grandparents'] assertions that they are grandparents within the meaning of [the applicable statute] and entitled to visitation under the statute are assumed to be valid, it becomes plain that the [asserted grandparents] are the proper parties to bring such a claim and thus have standing.[10]

After concluding that the asserted grandparents did have standing, we addressed the merits of their claim and concluded that they were not "grandparents" under the statute and were not entitled to grandparent visitation.[11] We vacated the order of visitation, remanding the cause with directions to dismiss.[12]

*Heiden* should inform our standing analysis in the present case. In his amended complaint, Apurba alleged that he engaged in sexual intercourse with Indraja Chatterjee; that, as a result, Indraja became pregnant with twins; that he is the twins' biological father; and that Indraja told him that he is the twins' biological father. Apurba requested, inter alia, genetic testing of the minor children to establish his paternity, the results of which did in fact favor his paternity.

Under § 43-1411, an "alleged father" may bring a civil action to "establish the paternity of a child." For purposes of § 43-1411, a "[c]hild" is a "child under the age of eighteen years born out of wedlock."[13] A "[c]hild born out of wedlock" is defined as a child whose "parents were not married to each other" at the time of the child's birth.[14] When an individual brings a paternity action as an "alleged father of [a] child

---

[10] *Id.* at 174-75, 912 N.W.2d at 761.

[11] *Id.* at 175, 912 N.W.2d at 761.

[12] See *Heiden, supra* note 5.

[13] Neb. Rev. Stat. § 43-1401 (Reissue 2016).

[14] *Id.*

[born out of wedlock]" per § 43-1411, he is alleging that he is a parent; he is alleging that under § 43-1401, he is one of the "parents [who] were not married to each other" at the time of the child's birth. Here, if Apurba's assertions that he is the children's biological parent and that he is entitled to establish his paternity are assumed to be valid, it becomes plain that Apurba is the proper party to bring his claim and thus has standing.

Accordingly, the applicable analysis should be as follows: Section 42-377 provides a "default" presumption of paternity that can be rebutted by clear, satisfactory, and convincing evidence.[15] Section 43-1411 provides who can rebut the presumption in establishing paternity, as well as where and how to do so. Section 43-1411 expressly grants standing to an "alleged father of such child." In this case, the fact of consequence is whether, under the plain language of the statute, Apurba qualifies as an alleged father, i.e., a parent not married to Indraja. Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[16] Apurba plainly qualifies as an alleged father. As this is apparent from the text of § 43-1411 and from his amended complaint, it should be the end of our standing analysis.

But the majority forgoes a plain language analysis in its construction of a fixed loop: The majority concludes that our statutory presumption of legitimacy as applied to children born in a marriage is rebuttable and, yet, operates to preclude interested parties from rebutting it. In doing so, the majority inappropriately shifts the focus of our standing analysis from Apurba to the claim itself.

---

[15] *Alisha C., supra* note 1, 283 Neb. at 356, 808 N.W.2d at 887.

[16] *Timothy L. Ashford, PC LLO v. Roses, ante* p. 302, 984 N.W.2d 596 (2023).

The majority contends that even if Apurba is an alleged father, he lacks standing because the children do not meet the definition of children born out of wedlock. The majority suggests that our holding in *State on behalf of Miah S. v. Ian K.*[17] definitively determined that a child born during a marriage is not a child born out of wedlock. The majority then applies the doctrine of legislative acquiescence to indicate that the issue has been fully resolved.

Though the language cited by the majority is found in *State on behalf of Miah S.*, perhaps our opinion was not as precise as it could have been. In that case, we considered whether the State had the statutory authority to establish paternity in a putative father when the child was born during the marriage of the mother and another man. We concluded that the child was not a child on whose behalf the State was authorized to initiate a civil proceeding to establish paternity under § 43-1411. We made no determination as to whether a putative father had standing to seek the establishment of paternity.

My concern with *State on behalf of Miah S.* is that we did not address in it the earlier case of *Gomez v. State ex rel. Larez*[18] in which we held that the mother of a child born out of wedlock, within the meaning of our paternity statutes, may be a married woman at the time of conception and birth of the child. As such, the *Gomez* holding seems to indicate that a child born during a marriage can be considered a child born out of wedlock, which *State on behalf of Miah S.* fails to address or reconcile. The majority opinion attempts to distinguish *Gomez* by noting that the movant in that case was the biological mother instead of the biological father. However, nothing within our paternity statutes articulates different standing rules for biological mothers and biological fathers. If

---

[17] *State on behalf of Miah S. v. Ian K.*, 306 Neb. 372, 945 N.W.2d 178 (2020).

[18] *Gomez v. State ex rel. Larez*, 157 Neb. 738, 61 N.W.2d 345 (1953).

the Legislature had wished to make such a distinction, it could have easily done so in § 43-1411.

Because of our contradictory holdings in *State on behalf of Miah S.* and *Gomez*, it would be difficult, if not impossible, to determine which of our conflicting interpretations of the phrase "child born out of wedlock" the Legislature has acquiesced in. The doctrine of legislative acquiescence generally holds that "'when an appellate court judicially construes a statute and that construction fails to evoke an amendment, it is presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.'"[19] Here, however, we have judicially construed the statutory text in two different ways, and the most that can be said is that the Legislature has expressed no opinion. As such, I respectfully disagree with the majority opinion's contention that the definition of a "child born out of wedlock" is well-settled law.

When considering the definition of a "child born out of wedlock," I note that § 43-1401(2) defines the same as "a child whose parents were not married to each other at the time of its birth." Here, the results of the genetic testing clearly show that Apurba is the biological father of the minor children. Further, the record is clear that Apurba was not married to Indraja at the time of the conception or birth of the minor children. Lastly, as the majority points out, there has been no establishment of paternity in Indraneel. As such, under the plain reading of the statute, I suggest that the minor children meet the definition of children born out of wedlock because their parents were not married at the time of their conception or birth. So whether one focuses on the terms "alleged father" or "child," either way Apurba has standing to bring this action to establish paternity.

I recognize that a factual situation like the one here presents difficult policy considerations. However, the sole question

---

[19] *State v. Casterline*, 290 Neb. 985, 988, 863 N.W.2d 148, 151 (2015).

before this court is whether the statutes discussed above give Apurba standing to attempt to establish paternity. Because I believe these statutes are best read to provide him with such standing, I respectfully dissent from the majority's opinion finding otherwise.

Miller-Lerman and Papik, JJ., join in this dissent.